**JOHN HANCOCK MUT. LIFE INS. CO. v. BENNETT et al.**

No. 1901.

Court of Civil Appeals of Texas. Waco.

May 27, 1937.

Rehearing Denied June 24, 1937.

Renfro & Kilgore and Geo. A. Titterington, all of Dallas, for appellant.

Walker & Baker, Mitchell Davis, and Ruel C. Walker, all of Cleburne, for appellees.

GEORGE, Commissioner.

Appellees, Tom R. Bennett, William John Bennett, Chester Leroy Bennett, Mrs. Irene Deatherage, Mrs. Della Mae Foster, and Mrs. Cordia Ratliff, being all of the children of I. M. Bennett, deceased, and surviving wife Dora E. Bennett, except Henry L. Bennett, filed suit against John Hancock Mutual Life Insurance Company in trespass to try title to recover 70 acres of land and for partition. A trial to the court was had and judgment was rendered that appellees recover 514/609 of the land and appellant 95/609 thereof, together with the right of possession of 1/3 of the 514/609 during the life of Dora E. Bennett, and appointed appraisers to partition the land. Appellant says (1) the entire interest in the 70-acre tract of land was community property of I. M. Bennett and Dora E. Bennett; and (2) if the entire interest was not community property, then the separate estate of I. M. Bennett was so commingled with the community estate as to make it incapable of identification and thereby deprived it of its separate character; (3) four of the appellees, by signing as sureties on mother's community survivorship bond, became bound by the judgment of the probate court; and (4) appellees are estopped from attacking the validity of deed of trust executed by Dora E. Bennett as community survivor.

Marguet Bennett died December 6, 1911, leaving a will bequeathing Robert Bennett, surviving husband, a life estate in her property, with remainder to their children. All property owned by them at that time was community property and its appraised value as of January 24, 1916, was $37,919.80. Robert Bennett, on October 22, 1917, divided the real and personal property on hand, including that acquired by him and his deceased wife, Marguet Bennett, as community property, as well as that acquired by him after her death, into seven equal parts and delivered one of these parts to each of their seven children. The real estate was conveyed by seven deeds, duly executed, acknowledged, and delivered by Robert Bennett on that date, containing identical wording except as to grantee and description of property. The deed from Robert Bennett to I. M. Bennett conveying 145 acres of land, of which the 70-acre tract involved in this suit is a part, contained recitals to the effect that it was executed in consideration (1) of the full settlement of all claims, rights, and demands of any nature which grantee had against grantor individually or otherwise; (2) full settlement and release by grantee of all claims, rights, titles, and demands of any nature which grantee had or might have against grantor or any other person arising out of or in connection with the estate of Marguet Bennett, deceased; (3) payment to grantor by grantee annually on the 15th day of October of each and every year during the life of grantor the sum of $200, commencing October 15, 1918. The deed further provided that it was agreed that in the event grantee failed to make the annual payments as provided, then that the title to the land would be divested out of grantee and vested in grantor, and that in addition thereto a vendor's lien was retained on all of said land and the crops to be grown thereon to secure the payment of said annual payments. The last clause in said deed reads as follows: "I desire to state in connection with this conveyance that same is a full settlement of all rights of the grantee herein in the estate of my deceased wife, and also is intended as a full conveyance to the grantee of any rights arising thereunder, and this conveyance, together with six (6) other conveyances to my children, of even date, is made by me as a division

of my estate, and a full and final settlement of all claims which said grantee may have against me in any manner. In order that the fact may be definitely known, I state further that in making such settlement I have paid in cash to my son Ruben Bennett the sum of Twenty Two Hundred Dollars in cash, and to my son I. M. Bennett the sum of Seven Hundred Seventy Nine Dollars in cash;—said payments being made to them so that the value of the lands conveyed to my said seven children, when taken in connection with said cash payments, are approximately . equal." The 70-acre tract of land involved in this suit is a part of the 145-acre tract of land acquired after the death of Marguet Bennett. The records indicate that there was outstanding on the date of the execution of the deed an indebtedness in the sum of $5,000, the payment of which was secured by deed of trust on the 145-acre tract, and also that there was outstanding vendor's lien notes in the aggregate sum of $1,950, and that these notes were paid and liens released of record soon after the execution and delivery of such deed. Robert Bennett was the owner and holder of the vendor's lien notes at the date of the execution of the deed. Mrs. Dora E. Bennett testified that I. M. Bennett did not have funds with which to pay these notes. I. M. Bennett was a son of Robert Bennett and Marguet Bennett. Robert Bennett died February 6, 1919, after the maturity of one $200 payment.

I. M. Bennett died intestate February, 1924, leaving surviving him Dora E. Bennett, wife, and the following children: Henry L. Bennett, Tom R. Bennett, William John Bennett, Chester Leroy Bennett, Mrs. Irene Deatherage, Mrs. Della Mae Foster, and Mrs. Cordia Ratliff. He left no debts. In September, 1924, Dora E. Bennett purchased a 100-acre tract of land, partly for cash and partly on time. Dora E. Bennett, in December, 1927, qualified as community administratrix by taking oath and executing bond with all of appellees as sureties thereon except Cordia Ratliff and Chester Leroy Bennett. Dora E. Bennett and son Henry L. Bennett, on February 20, 1928, executed and delivered to John Hancock Mutual Life Insurance Company a note in the sum of $8,500 in renewal of the balance due on the purchase price of said 100 acres, including principal and interest, together with accrued taxes, and received $107.50 in money. On the same date they executed and delivered a deed of trust covering the 70 acres involved, as well as the 100 acres. These instruments were executed by Dora E. Bennett individually and as survivor of the community estates of herself and deceased husband. The land was sold under deed of trust on May 7, 1935, to John Hancock Mutual Life Insurance Company. The 145-acre tract constituted the homestead of I. M. Bennett and Dora E. Bennett and was exclusively used by her at all times. Appellees were informed by their mother of the deed of trust on the 70 acres of land two or three years before the filing of the suit and some of them examined the records at that time.

The language used in the deed to I. M. Bennett and the act of Robert Bennett in executing and delivering a similar deed to each of his children, distributing and disposing of all land owned theretofore both by him and his children as heirs of their deceased mother in equal portions, evidenced an intent and plan on his part to accomplish in his lifetime an equal distribution of such two estates among his children and at the same time secure the payment annually of sums aggregating $1,400 for his maintenance. While it is apparent from all the facts and circumstances that it was not his intention in executing and delivering such deeds to sell the lands, and it was not the children's intention in accepting the deeds to purchase the lands, yet it is also apparent that it was the intention of all parties that Robert Bennett should be provided a definite income annually during the remainder of his life and a speedy and effective means of enforcing performance thereof. The $200 to be paid annually by each grantee was in the nature of a charge or rental for the present use and possession of such property. The amount payable annually was certain but the duration was uncertain. I. M. Bennett's interest in his mother's estate was his separate property, and the property received in exchange therefor became separate. The obligation on the part of I. M. Bennett to pay annually the sum of $200 during the lifetime of Robert Bennett, who was in his 70's, is not such a substantial part of the value of the 145 acres as to preclude the idea of a gift of the father's share of the property. We think the evidence is sufficient to support the finding of the trial court that I. M. Bennett acquired a separate interest in the 145-acre tract of land and that the entire

interest in the 70 acres did not become community property of I. M. Bennett and Dora E. Bennett. John et al. v. Battle, 58 Tex. 591; Foster et al. v. Christensen (Tex.Com.App.) 67 S.W.(2d) 246, 249; Speer, Marital Rights in Texas (3d Ed.) § 381, p. 462. In the case of Foster v. Christensen, supra, Judge Smedley said: "When the wife's separate funds are used to pay but part of the purchase price of land acquired by the husband and wife during marriage, she has, in the absence of a different intention, an interest or equity in the land in proportion to such payment by her. The wife's separate ownership of property, although standing in the name of her husband or appearing on record to be community property, may be proven as any other fact by any competent evidence, including parol evidence, surrounding circumstances, and declarations of the parties."

■ Appellees sought to recover their share of the separate interest owned by their father in a specific tract of land and the court found that I. M. Bennett, at the time of his death, owned an undivided 257/261 interest in such tract of land as his separate estate. No reimbursement was sought against the community for advances, contributions, or expenditures made by the separate and no attempt was made to charge the community with the value of the separate. And since the judgment of the trial court awards to appellees only their share of the property found to be separate in its character and origin, the rule applied in Edelstein v. Brown, 100 Tex. 403, 100 S.W. 129, 123 Am.St.Rep. 816; Id. (Tex.Civ.App.) 95 S.W. 1126, with respect to the commingling by the husband of his separate funds with the community so as to render it incapable of identification has no application here.

■ Appellant's third proposition is untenable for the reasons, (1) no attack is made on the validity of any of the orders of the probate court in the community administration proceedings; and (2) no order was entered purporting in any wise to authorize community survivor to control, mortgage, or dispose of the separate estate of I. M. Bennett, deceased.

■ Appellant's fourth proposition is also untenable, because appellant knew (1) that two of the appellees were minors at the time of the execution of the deed of trust; (2) the indebtedness evidenced by the $8,500 note was not a community debt, but was the individual indebtedness of Dora E. Bennett; (3) that I. M. Bennett owned a separate interest in the 145-acre tract at the time of his death; and for the reason that appellant had superior knowledge of all the facts and was in a better position to foresee the consequences. The language of the deed from Robert Bennett to I. M. Bennett was in itself a warning to appellant not to accept the deed of trust covering the 70 acres of land until it had made a full investigation as to whether the property was separate or community and imposed upon appellant the duty of making such inquiry before acting. Grinnan v. Dean, 62 Tex. 218. The evidence supports the court's finding that there was no testimony showing an estoppel, and the court's finding (implied) that appellant was not ignorant of the real facts and that there was no fraud, actual or imputed, in the conduct of appellees. Benskin et al. v. Barksdale (Tex.Com.App.) 246 S.W. 360.

The judgment of the trial court is affirmed.

Opinion adopted by the court.