JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY V. TOM R. BENNETT, ET AL.

No. 7318. Decided May 31, 1939.
Rehearing overruled July 5, 1939.
(128 S. W., 2d Series, 791.)

*George A. Titterington, Renfro & Kilgore,* all of Dallas, for plaintiff in error.

The community administration proceedings in the probate court, wherein Dora Bennett qualified as community survivor, and orders of such court were the judgments of a court of general jurisdiction in probate matters and are binding until set aside in direct proceedings brought for that purpose. Such orders and judgments are binding on all persons, but are particularly binding on the children and their mother, as sureties on her bond, who as such sureties are absolutely precluded from asserting any claim to the land in controversy, on the theory that they are bound by the orders and judgments of the probate court. Steele v. Rehn, 50 Texas 467, Jordan v. Imthurn, 51 Texas 276; Burnett v. Atterberry, 145 S. W. 582; Janes v. Gulf Production Co., 15 S. W. (2d) 1102; 27 Tex. Jur. 27.

*Mitchell Davis, Ruel C. Walker* and *Walker & Walker,* all of Cleburne, for defendants in error.

Neither did Mrs. Bennett's qualifying as administratrix nor the signing of her bond as such by some of the children confer upon her any power to deal with or authorize her to mortgage the separate property of her husband. The county court was without jurisdiction to determine whether the property inventoried was separate or community and made no attempt to do so. Fisk v. Flores, 43 Texas 345; Polk v. Chaison, 72 Texas 500, 10 S. W. 581; Allen v. Allen, 101 Texas 365, 107 S. W. 528.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

It is believed that the statement of the case can best be followed by employing here the designations given the parties in the trial court, wherein Tom R. Bennett, two of his three brothers and his three sisters, children of I. M. Bennett, deceased, and his surviving widow, Mrs. Dora E. Bennett, were plaintiffs and John Hancock Mutual Life Insuance Company was defendant. The suit is an action of trespass to try title to 70 acres of land in Johnson County and for partition thereof. It resulted in the trial court in a judgment in favor of the plaintiffs for an interest in the land expressed by the fraction 514/609, and awarding to defendant an interest expressed by the fraction 95/609. The judgment further awarded to the defendant the right of possession of one-third of the interest recovered by the plaintiffs during the lifetime of their mother, Mrs. Dora E. Bennett, and appointed appraisers to partition the land. The trial court's judgment was affimed by the Court of Civil Appeals. 106 S. W. (2d) 822.

To understand this controversy it becomes necessary to go back to December 6, 1911. On that date Mrs. Marguet Bennett, the grandmother of plaintiffs, died leaving a will bequeathing to her husband, Robert Bennett, grandfather of plaintiffs, a life estate in her property with remainder to their seven children. All property owned by them at that time was community property and was appraised as of January 24, 1916, at $37,919.80. After the death of Marguet Bennett, her surviving husband, Robert Bennett, and son, I. M. Bennett, purchased a tract of land containing 145 acres, of which the 70 acre tract in controversy is a part. The conveyance was made to Robert Bennett and I. M. Bennett without designating the interest conveyed to each, and the consideration recited in the deed was $11,600.00 paid and secured to be paid by Robert Bennett and I. M. Bennett as follows: $4,650.00 in cash, the assumption by the vendees of a note for the principal sum of $5,000.00 payable to the John Hancock Mutual Life Insurance Company and the execution by Robert Bennett and I. M. Bennett of three notes secured by a vendor's lien, each in the principal sum of $650.00. When this deed was executed I. M. Bennett was a married man and he, with his wife and children, took possession of the land and established a homestead upon his undivided interest therein. Thereafter, by deed dated October 13, 1917, all of the seven children of Robert Bennett joined in the execution of a warranty deed conveying to him eleven tracts of land. This conveyance included all of the land owned by Robert Bennett and his wife, Marguet Bennett, at the time of her death, and also included

the 145 acre tract acquired by Robert Bennett and I. M. Bennett after her death. The consideration recited in the deed was $1.00 paid to each child and "other considerations" that have been fully paid to us." The deed made no mention of the outstanding indebtedness against the 145 acre tract. Mrs. Dora E. Bennett, wife of I. M. Bennett and mother of plaintiffs, did not join in that deed, although, as above noted, a one-half interest in the 145 acre tract had theretofore been impressed with the homestead character by her and her husband. Nine days after the execution of that deed Robert Bennett executed seven deeds with practically identical recitals, one to each of his children, disposing of all of his property. To I. M. Bennett there was conveyed the said 145 acre tract. None of the land belonging to the community of his father and mother was conveyed to him. The deed recited the following consideration.

"KNOW ALL MEN BY THESE PRESENTS, THAT I, Robert Bennett, of Johnson County, Texas, for and in consideration of the full settlement, satisfaction and discharge by the grantee herein of all rights, claims, demands of any nature which said grantee has against me individually or otherwise, and in consideration of the release by the grantee herein of any and all claims, rights or demands of any nature or character which said grantee has against me, or any other person whomsoever, growing out of or in connection with the estate of Marguet Elizabeth Bennett, my deceased wife, and in full settlement, satisfaction and discharge of any and all claims, rights, titles and demands of any nature which said grantee has or may have in the future arising out of or in connection with the said estate, or any claim of inheritage or devise from my said deceased wife, and

"In consideration of the payment to me annually of the sum of Two Hundred Dollars, by the grantee hereinafter named and in the manner hereinafter named, said payment of Two Hundred Dollars to be made annually on the fifteenth day of October of each and every year during the term of my natural life, the first payment of Two Hundred dollars to be made on October 15th, 1918, as hereinafter fully set forth, * * *."

After the hadendum clause were the following provisions:

"THE ABOVE CONVEYANCE to the Grantee herein named, is made on the following EXPRESS CONDITION, to-wit:— That the said Grantee will pay to me, the said Robert Bennett each year hereafter, the sum of Two Hundred Dollars, beginning October 15th, 1918, and on the 15th day of October of each year dur-

ing my natural life, the sum of Two Hundred Dollars; said sum of Two Hundred Dollars to be paid annually during each year of my natural life, on the dates hereinbefore mentioned;

"Now, it is expressly stipulated, and agreed to by the grantee herein by the acceptance of this conveyance, that in the event the grantee should fail or refuse for any reason to pay to me on October 15th, 1918, the sum of Two Hundred Dollars, and a like sum of Two Hundred Dollars on the 15th day of October of each year thereafter during my natural life that then the condition on which this conveyance is made shall be thereby breached and that the title to the lands herein conveyed shall thereby vest in me, the said Robert Bennett, and all right, title and interest created by this conveyance shall thereby be defeated, and same shall be of no further force and effect; and that on breach of such condition that said title shall be re-invested in me without the necessity of re-entry, notice, demand or suit. However, if said payments shall be well and truly made by said grantee to me at the times, in the amounts and in the manner herein stated, then said conveyance shall remain in full force and effect.

"And it is further expressly stipulated, without prejudice in any way to the CONDITION above set out upon which this conveyance is made, that I hereby retain an express lien, and contract lien, as well as an express vendors lien, on all and singular the above described premises, together with any and all crops raised or to be raised thereon during my natural life, to secure the payment to me annually of said sum of Two Hundred Dollars, and that this conveyance shall not become absolute until said sums are so paid to me annually as set out herein. In making the reservation of the liens herein provided for, it is expressly stipulated that same shall be without prejudice in any way to any right I have to declare the CONDITION upon which this conveyance is made as BROKEN and to terminate the estates conveyed herein, and that any action or election that I may take or make looking to the collection and payment to me of said sum of Two Hundred Dollars annually, shall not prejudice any other right hereunder, and such election shall not prevent me pursuing any other right or remedy that I may have hereunder.

"I desire to state in connection with this conveyance that same is a full settlement of all rights of the grantee herein in the estate of my deceased wife, and also is intended as a full conveyance to the grantee of any rights arising thereunder, and this conveyance, together with six (6) other conveyances to my children, of even date, is made by me as a division of my estate,

and a full and final settlement of all claims which said grantee may have against me in any manner. In order that the fact may be definitely known, I state further that in making such settlement I have paid in cash to my son, Ruben Bennett the sum of Twenty Two Hundred Dollars in cash, and to my son, I. M. Bennett, the sum of Seven Hundred Seventy Nine Dollars in cash;—said payments being made to them so that the value of the lands conveyed to my said seven children, when taken in connection with said cash payments, are approximately equal."

As noted above, in the purchase of the 145 acre tract Robert Bennett and I. M. Bennett executed three notes secured by a vendor's lien, each in the sum of $650.00. Later, Robert Bennett acquired these notes by transfer from the payee named therein and he executed a release of the vendor's lien securing same shortly after the conveyance by him to I. M. Bennett of the 145 acre tract. That release was dated November 13, 1917. Thereafter, on November 19, 1917, John Hancock Mutual Life Insurance Company executed a release of the lien securing the indebtedness of $5,000.00 assumed by Robert Bennett and I. M. Bennett in the deed conveying the 145 acre tract to them. It thus appears from the record that at the time Robert Bennett conveyed to his son, I. M. Bennett, the 145 acre tract same was incumbered to the extent, at least, of $5,000.00, which was an obligation of the community of I. M. and Dora E. Bennett. It is probably a correct deduction from the record that the lien for $1950.00 evidenced by the three notes of $650.00 each, executed by Robert Bennett and I. M. Bennett were extinguished by merger when Robert Bennett acquired them. I. M. Bennett paid to his father, Robert Bennett, the first annual payment of $200.00 called for in the deed by the latter to him, but his father died before the second payment would have fallen due.

I. M. Bennett died intestate in 1927, and his surviving widow, Mrs. Dora E. Bennett, qualified as community survivor, and filed an inventory and appraisement of the community estate of herself and her deceased husband. The only property listed in the inventory was the 145 acre tract of land. After qualifying as survivor, Mrs. Dora E. Bennett purchased another tract of land, against which John Hancock Mutual Life Insurance Company held a lien to secure a note of $6,000.00. She purchased that tract subject to such lien, and thereafter, in renewal thereof and as further security for the indebtedness executed a deed of trust lien upon the 70 acres in controversy. The deed of trust executed by her covered the

100 acre tract which she had purchased as well as the 70 acre tract in controversy, and was executed to secure the balance due on the $6,000.00 indebtedness, some taxes paid by defendant, the balance due on another indebtedness against the 100 acre tract which the defendant had acquired and for a small loan made by the defendant to her at the time of the renewal. That deed of trust was executed by her for herself and as community survivor. One of her sons, Henry L. Bennett, joined with her in the execution of that deed of trust and he is not a party to this suit. Thereafter, default having been made by Mrs. Bennett in the payment of an installment due upon her note to the defendant, the land was sold by trustee's sale, at which sale the defendant became the purchaser. No question is presented as to the validity of the deed of trust in so far as it covered the interest of Henry L. Bennett or the interest of Mrs. Dora E. Bennet in the land, nor is any question made as to the regularity of the sale under the powers contained in the deed of trust.

The foregoing recitals bring us to the situation as it existed when the instant suit was filed. The plaintiffs are all of the children of I. M. Bennett and Mrs. Dora E. Bennett except Henry L. Bennett, whose interest in the land admittedly passed to the defendant by the trustee's sale. The theory upon which a recovery of the title to the land is being sought is that it was the separate estate of I. M. Bennett; that Mrs. Dora E. Bennett had no authority, either as an individual or as the survivor of the community, to incumber the land with the deed of trust lien executed by her to the defendant, and that, by its purchase of the land at the trustee's sale, the defendant acquired only the life estate of Mrs. Dora E. Bennett and the interest of Henry L. Bennett, who joined his mother in the deed of trust. The contentions of the plaintiffs were, in the main, upheld by the courts below. The interest awarded to the defendant, expressed by the fraction 95/609, was arrived at by adding the fractional interest of Henry L. Bennett to an interest found by the court to have belonged to the community by virtue of the payment by I. M. Bennett to his father, Robert Bennett, of the first annual installment of $200.00 in accordance with the requirements of the deed, above copied.

One of the grounds relied on by the defendant for a reversal of the judgments below is that there was such a commingling of the separate estate of I. M. Bennett with the community estate of I. M. Bennett and Mrs. Dora Bennett as to make it incapable of identification, and that, therefore, the entire tract

should be regarded as community property. In deciding the question thus presented we are guided by the following well established rules:

■ 1st. Property acquired during marriage is presumed to be community property and the burden of proving its separate character is on the party asserting it. Smith v. Bailey, 66 Texas 553, 1 S. W. 627; Claflin v. Pfeifer, 76 Texas 469, 13 S. W. 483; Speer on Marital Rights, Sec. 298; 23 Tex. Jur. p. 355, Sec. 307.

2nd. The status of property as separate or community is fixed as of the time of the inception of the title. Daken v. Daken, 125 Texas 305, 83 S. W. (2d) 620; Bongio v. Gleich, 128 Tex. 606, 99 S. W. (2d) 881; Janes v. Gulf Prod. Co., 15 S. W. (2d) 1102 (Error refused) ; Lusk v. Parmer, 87 S. W. (2d) 790; Leinneweber v. George et al., 95 S. W. (2d) 478.

■ With these rules in mind we consider the facts with reference to the acquisition of the land in controversy by I. M. Bennett. They present problems not at all easy of solution. As noted above, the 145 acre tract, of which the 70 acres in suit forms a part, was conveyed to Robert Bennett and I. M. Bennett by deed which did not disclose what interest was conveyed to each. There being no evidence to the contrary, it will be presumed that each of them acquired a one-half interest in the tract. Ford v. Anderson, 83 S. W. (2d) 443; Keltner v. Glenn, 81 S. W. (2d) 1051; 14 Tex. Jur. 931; 18 C. J. 329.

■ The half interest acquired by I. M. Bennett was the community property of himself and his wife, Mrs. Dora E. Bennett. Was the status of that half interest changed by the transactions from community property to the separate property of I. M. Bennett? That question must be answered in the negative. At the time I. M. Bennett undertook to convey that interest to his father, Robert Bennett, it had already been impressed with the homestead character. Mrs. Dora E. Bennett, wife of I. M. Bennett, did not join in that deed and was not bound by it. We question whether, independent of any consideration of homestead rights, a husband could alone convey community property for a nominal consideration and receive same back from his vendee in the form of a gift and in that manner change the character of the property from community to his separate estate. That question need not here be discussed, for it is not presented for decision. We do hold that a husband cannot convert the community homestead of himself and wife into his separate estate by alone deeding it away and receiving

it back in the form of a gift. That conclusion seems self evident.

■ It is urged that the defendant cannot set up the claim of homestead in Mrs. Dora E. Bennett. That is not the question. The burden was upon plaintiffs to establish the fact that this half interest, which formerly was community property and the homestead of I. M. and Dora E. Bennett, had been converted into the husband's separate estate. Besides, the record affirmatively discloses that Dora E. Bennett has done nothing to recognize the validity of the sale of the homestead by her husband to his father. She made affidavit in the probate proceedings that this property was community property and administered same as community survivor. In that capacity, and individually, she executed the deed of trust, and after the defendant purchased the land at trustee's sale she executed a quitclaim deed to it, thereby expressly confirming its title in so far as she could do so. The defendant has succeeded to her title and may certainly complain of the failure of the plaintiffs to discharge the burden of establishing that this one-half interest was the separate estate of I. M. Bennett. We conclude that the one-half interest originally purchased by I. M. Bennett remained community property.

■ As to the other half interest a different problem is presented. It is evident from a reading of the portions of the deed from Robert Bennett to I. M. Bennett above copied that a part of the consideration for that conveyance was the interest of I. M. Bennett in his mother's estate which passed to him under her will. It is further apparent that Robert Bennett intended to make some character of gift to his son. If the property was free of all incumbrances at the time the conveyance was made by Robert Bennett to I. M. Bennett, the one-half interest owned by Robert Bennett passed to I. M. Bennett as his separate estate. But the record fails to disclose that same was unincumbered at that time. As noted above, in the purchase of this tract Robert Bennett and I. M. Bennett assumed, as part of the consideration therefor, a note payable to the defendant for $5,000.00. The lien secured by that note was released after the conveyance by Robert Bennett to I. M. Bennett. The obligation to pay that note was an obligation of the community of I. M. and Dora E. Bennett. It is urged that the inference should be drawn that Robert Bennett paid off that indebtedness and conveyed the property to his son free of incumbrances. The burden was upon plaintiffs to prove that fact, if it is a fact, and we find no evidence

in the record discharging that burden. It, therefore, appears that I. M. Bennett acquired this one-half interest from his father in part by onerous title, and that the onerous consideration was an obligation of the community.

■ It is a well settled rule that property acquired for a consideration paid in part out of community funds and in part out of separate funds of one of the spouses is in part community and in part separate property. The two estates own such property by way of a sort of tenancy in common. Claiborne v. Tanner, 18 Texas 68; Bongio v. Gleich, supra. It is impossible to determine from the record what proportion of the consideration for this conveyance was the interest owned by I. M. Bennett in his mother's estate. There is no evidence of its value. Upon another trial, should it be established, as insisted by plaintiffs, that Robert Bennett discharged the indebtedness against this property for which his son, I. M. Bennett, had theretofore bound his community estate, and conveyed the one-half interest owned by him free of incumbrance, then the ruling of the trial court should be that a one-half interest in this property was the separate estate of I. M. Bennett. If, however, the contrary facts appear with reference to the payment of the indebtedness, evidence should be offered which will enable the court to determine the interests owned by the separate and community estates respectively.

■■ In what has been written above we have taken no account of the obligation imposed upon I. M. Bennett in the deed to him by his father to pay the latter $200.00 per year during his lifetime. Referring back to the portions of the deed above copied, it will be observed that one of the considerations named therein was the payment by I. M. Bennett to Robert Bennett of the sum of $200.00 annually, such payment to be made on October 15th of each year during the lifetime of Robert Bennett. By the language of the deed it was sought to make the payment thereof a condition subsequent, for a breach of which the title would revert to the vendor. The deed further provided for a lien upon the premises and all crops to be raised thereon to secure the payment of the obligation. The facts disclose that one such annual payment was made, and that Robert Bennett died prior to the date the second payment would have become due. The contention is pressed upon us that, with such a provision in the deed, the land was acquired by I. M. Bennett by onerous title; that the deed should be construed as a sale in consideration of a community obligation and,

therefore, that the property was wholly community. It is immaterial here to determine whether the provision in the deed for the payment of $200.00 per year should be construed as a condition subsequent or as an obligation. Our conclusion on this phase of the case does not rest upon a determination of that collateral question. We recognize the general rule that gift and onerous consideration cannot coexist. Kearse v. Kearse (Com. App.) 276 S. W. 690. But we do not agree that the deed should be construed as a sale for an onerous consideration. Robert Bennett was an old man when this deed was made. He determined to wind up his affairs and make disposition of all of his property to his children while yet alive. The $200.00 annual payment was insignificant in amount as compared to the value of the estate conveyed. It probably did not amount to a reasonable rental value of the property. To hold that he sold his property to his children under the facts and circumstances here in evidence would be to ignore the evident intention of the parties. The dominant purpose was to give and not to sell. The children evidently conveyed their property to him solely for the purpose of enabling him to effect an equitable distribution of all the estate. They never in fact parted with the equitable title to their mother's estate. An intent on their part to purchase that which was already owned by them cannot be presumed. Giving effect to the true intention of the parties rather than to the form, it is evident that the real consideration for the obligation to pay this small sum annually was the right to the present possession of the property, together with the fruits and revenues to be derived therefrom. The effect of that provision of the deed was not to fashion the character of the transaction into a purchase in such manner as to constitute the property community property. By this holding we do not intend to give sanction to the proposition that the parties to a deed, which on its face discloses a sale, may by parol show that the consideration recited therein was less than the value of the property conveyed, and that the transaction was in fact partly a sale and partly a gift. Our holding is based upon the language of the particular deed under construction, considered in the light of the position of the parties and the surrounding circumstances.

■ The combined effect of the holdings above made is to sustain the assignment under consideration, that there was such a commingling of the separate and community estates as to make the separate estate incapable of identification. But final judgment on the merits will not be rendered here. We

have no doubt that some portion of this property was the separate estate of I. M. Bennett. The facts have not been fully developed; neither was the case tried upon the correct theory. It is evident that the theory upon which the case was tried was that the title of I. M. Bennett had its inception in the deed from his father to him, whereas, we hold it had its inception in part prior to that time in the deed to him and his father. The case will therefore be remanded to the trial court in order that it may be fully developed on the correct theory in accordance with this opinion.

We approve the holdings of the Court of Civil Appeals upon the other questions discussed in its opinion.

The judgments of the trial court and the Court of Civil Appeals are both reversed and the cause remanded.

Opinion adopted by the Supreme Court May 31, 1939.

Rehearing overruled July 5, 1939.