**JOHN HANCOCK MUT. LIFE INS. CO. et al. v. BENNETT et al.**

No. 2368.

Court of Civil Appeals of Texas. Waco.

Feb. 5, 1942.

Rehearing Denied March 12, 1942.

Renfro & Kilgore, Coker, Rhea & Vickrey, and Geo. A. Titterington, all of Dallas, for appellants.

Walker & Walker, of Cleburne, for appellees.

RICE, Chief Justice.

On December 12, 1935, all of the children of I. M. Bennett, deceased, except a son, Henry L. Bennett, brought suit in trespass to try title to, and for partition of, a tract of 70 acres of land in Johnson county, against the John Hancock Mutual Life Insurance Company; and on the same day all of said children brought a similar suit against the Commerce Trust Company, assignee of Commerce Farm Credit Company, and others not necessary to mention, involving the title to an adjoining tract of 75 acres of land. The two tracts above mentioned are carved out of the 145-acre tract hereinafter referred to.

Herein the plaintiffs will be referred to as such; the defendant John Hancock Mutual Life Insurance Company as the Insurance Company; and the defendant Commerce Trust Company as the Loan Company.

The first suit above mentioned proceeded to trial, resulting in a judgment in favor of plaintiffs against said Insurance Company. This judgment, on appeal, was affirmed by the Court of Civil Appeals (106 S.W.2d 822); but was reversed and remanded by the Supreme Court (133 Tex. 450, 128 S.W.2d 791). The opinion was written by Judge Hickman of the Commission of Appeals, and was adopted by the Supreme Court.

Thereafter, the two causes above mentioned, having been consolidated, were tried to the court, a jury being waived, resulting in a judgment that plaintiffs were the owners of a 6/14 interest in the 70 acres of land involved, the Insurance Company owning the remaining 8/14 interest; that in respect to the 75-acre tract, plaintiffs and defendant Loan Company each owned a ½ interest in the east 30 acres thereof; and that the remaining 45 acres were owned 10/14 by the Loan Company and 4/14 jointly by four of the plaintiffs, the remaining three plaintiffs having no interest therein. The judgment was also one for partition among the joint owners, and for recovery by plaintiffs for the rental value of their interest in the land. Findings of fact and conclusions of law were filed by the trial court.

It is the contention of the defendants that the trial court erred in finding that the title to an undivided one-half interest in the lands involved was vested in the separate estate of I. M. Bennett, deceased, under whom the plaintiffs claimed by inheritance; and that, to the contrary, the evidence adduced on the trial, under the pronouncements of the Supreme Court on the former appeal, showed that the title to all of the land involved was vested in the community estate of the said I. M. Bennett and his wife, Dora, who survived him.

The opinion of the Supreme Court above referred to contains a succinct yet comprehensive statement from the record then before it. The same facts appear from the record on this appeal, as well as additional facts developed for the first time in the second trial. In order that the matters in controversy may be properly understood, it becomes necessary for us to summarize the controlling facts developed on this appeal. In so doing we are adopting, in so far as we may, the statement made in the opinion of Judge Hickman.

In December, 1911, Mrs. Marguet Bennett, the grandmother of plaintiffs, died, leaving a will bequeathing to her husband, Robert Bennett, grandfather of plaintiffs, a life estate in her property with remainder to their seven children. All property owned by them at that time was community property and was appraised as of January 24, 1916, at $37,919.80. After the death of Marguet Bennett, her surviving husband, Robert Bennett, and son, I. M. Bennett, purchased the tract of 145 acres of land in controversy. The conveyance was made to Robert Bennett and I. M. Bennett without designating the interest conveyed to each, and the consideration recited in the deed was $11,600 paid and secured to be paid by Robert Bennett and I. M. Bennett as follows: $4,650 in cash, the assumption by the vendees of a note for the principal sum of $5,000, payable to the John Hancock Mutual Life Insurance Company, and the execution by Robert Bennett and I. M. Bennett of three notes secured by a vendor's lien, each in the principal sum of $650. When this deed was executed, I. M. Bennett was a married man and he, with his wife and children, took possession of the land and established a homestead upon his undivided interest therein. Thereafter, by deed dated October 13, 1917, all of the seven children of Robert Bennett joined in the execution of a warranty deed conveying to him eleven tracts of land. This conveyance included all of the land owned by Robert Bennett and his wife, Marguet Bennett, at the time of her death, and also included the 145-acre tract acquired by Robert Bennett and I. M. Bennett after her death. The consideration recited in the deed was $1 paid to each child and "other considerations that have been fully paid to us." The deed made no mention of the outstanding indebtedness against the 145-acre tract. Mrs. Dora E. Bennett, wife of I. M. Bennett and mother of plaintiffs, did not join in that deed, although, as above noted, a one-half interest in the 145-acre tract had theretofore been impressed with the homestead character by her and her husband. Nine days after the execution of that deed, Robert Bennett executed seven deeds with practically identical recitals, one to each of his children, disposing of all of his property. To I. M. Bennett there was conveyed the said 145-acre tract. None of the land belonging to the community of his father and mother was conveyed to him. The three purchase money notes

above referred to for $650 each were later acquired by Robert Bennett from the payee and transferred to him of record, and he, shortly after executing the deed conveying the 145 acres of land to I. M. Bennett, by instrument dated November 13, 1917, released the vendor's lien securing the payment of said three notes. Thereafter, by instrument dated November 17, 1917, and filed in the office of the County Clerk of Johnson County on January 11, 1918, the John Hancock Mutual Life Insurance Company released the lien on said 145-acre tract securing the indebtedness of $5,000 assumed by Robert Bennett and by I. M. Bennett in the deed conveying said tract of land to them. The deed from Robert Bennett to I. M. Bennett provided for the payment by the latter to the former of the sum of $200 annually. The payments maturing before the death of Robert Bennett were paid by I. M. Bennett.

I. M. Bennett died intestate in 1924, and his surviving widow, Mrs. Dora E. Bennett, in December, 1927, qualified as community survivor, and filed an inventory and appraisement of the community estate of herself and her deceased husband. The plaintiffs, Henry L. Bennett, Onus R. Deatherage, Irene Deatherage, T. R. Bennett, Johnnie Bennett, Della Mae Foster, R. J. Foster and W. M. Bennett executed, as sureties, the $14,500 bond, dated December 29, 1927, filed by Mrs. Dora E. Bennett in her qualification as community administratrix of the estate of herself and her deceased husband, I. M. Bennett. The only property listed in the inventory was the 145-acre tract of land. Before qualifying as survivor and in the year 1924, after her husband's death, Mrs. Dora E. Bennett purchased a tract of 100 acres of land against which the John Hancock Mutual Life Insurance Company held a lien to secure a note of $6,000. She purchased that tract subject to such lien, and thereafter, in renewal thereof and as further security for the indebtedness, executed a deed of trust lien upon the 70 acres in controversy. The deed of trust executed by her, dated February 20, 1928, covered the 100-acre tract as well as the 70-acre tract in controversy, and was executed to secure the balance due on the $6,000 indebtedness, the balance due on another indebtedness against the 100-acre tract, which latter indebtedness the Insurance Company had acquired, and for a small loan of $107.50 made by the defendant Insurance Company to her at the time of the renewal. The 70-acre

tract covered by said deed of trust was off of the east side of said 145-acre tract. That deed of trust was executed by her for herself and as community survivor. One of her sons, Henry L. Bennett, joined with her in the execution of that deed of trust and he is not a party to the suit against the defendant Insurance Company. Thereafter, default having been made by Mrs. Bennett in the payment of an installment due upon her note to said defendant, the land was sold at trustee's sale, at which sale the defendant Insurance Company became the purchaser. No question is presented as to the validity of the deed of trust in so far as it covered the interest of Henry L. Bennett or the interest of Mrs. Dora E. Bennett in the land, nor is any question made as to the regularity of the sale under the powers contained in the deed of trust.

Thereafter, and by instrument dated April 24, 1928, Mrs. Bennett, individually and as community survivor, executed a deed of trust to the Commerce Farm Credit Company on the remaining 75 acres of the 145-acre tract to secure the payment of a note for $3,000 payable to said Loan Company. This note was signed by Mrs. Dora Bennett in said capacities, and also by plaintiffs Henry L. Bennett, Tom R. Bennett, Johnnie Bennett, R. J. Foster and O. R. Deatherage. The two parties last mentioned were sons-in-law of Mrs. Bennett. This note contained the following provision: "This bond is secured by a first mortgage deed of trust lien upon that certain real estate and the improvements thereon situated, in Johnson County, Tex., and more particularly described in a deed of trust bearing even date herewith executed by me to JoZach Miller III, Trustee." The deed of trust securing said note was signed by Mrs. Bennett alone. The money evidenced by said note was not borrowed by Mrs. Bennett to pay a community indebtedness of herself and deceased husband, I. M. Bennett, and no such representation was made to the defendant Loan Company in so far as the record before us discloses. Thereafter, default having been made in the payment of an installment due on the last mentioned note, the land was sold at trustee's sale, at which defendant Loan Company became the purchaser. The validity of the deed of trust and sale thereunder, in so far as the same affects the interest of Mrs. Bennett in the land covered thereby, is not attacked. The record discloses, we think, that the plaintiffs who signed the $3,000 note with Mrs. Bennett, and those of plaintiffs who signed her bond as community survivor, knew at the time they executed such instruments that she desired to borrow money on part of the 145-acre tract, but it was their understanding (not gained from the defendant Loan Company or its assignor) that this money was to be borrowed on the west 45 acres of the 145-acre tract, which was also the west 45 acres of the 75-acre tract which the deed of trust in fact covered. This 45-acre tract was the only tract that they gave their consent to her mortgaging. Unless it could be reasonably inferred from the signing by the plaintiffs above mentioned of the note payable to the Loan Company, and the bond of Mrs. Bennett as community survivor, there is no evidence that the Loan Company knew that any of plaintiffs had consented to Mrs. Bennett mortgaging any part of the 145-acre tract. These plaintiffs testified that they did not read the note or deed of trust, were not present when Mrs. Bennett executed the last mentioned instrument, and that they did not learn until about the time of the foreclosure that the deed of trust executed by Mrs. Bennett covered the 75-acre tract, and not the 45-acre tract. The plaintiffs who executed the notes with Mrs. Bennett did not know at the time they executed the same that she had already executed to the defendant John Hancock Mutual Life Insurance Company a deed of trust on the east 70 acres of the 145-acre tract. These plaintiffs made no representations to the defendant Loan Company, except such as may be construed to have been made by them by the execution of the instruments above mentioned. The defendant relied on Mrs. Bennett's application for the loan, the executed loan papers and the abstract of title. The application for the loan was executed by Mrs. Bennett alone, recited that her husband, I. M. Bennett, was dead, that she then had seven children, two of whom were minors. In answer to the question therein set forth: "Have they (her children) any community or other interest in this land?" she answered: "Yes, I have qualified as community survivor." So far as the record before us discloses, no other representations or statements in reference to the interest of the children in the land offered as security was made or required before the loan was made, except the 145 acres was listed as community property in the inventory made by Mrs. Bennett when she qualified as survivor in commu-

nity. The plaintiffs did not know the land was so inventoried.

The deed above referred to from Robert Bennett to I. M. Bennett is quite lengthy. The major portion of it is quoted in the opinion above referred to, and for the sake of brevity, we refer to said opinion for the contents thereof. In this connection, however, we think it should be stated that the said deed to I. M. Bennett, as well as the deeds from Robert Bennett to his other children, contained the following statement: "I desire to state in connection with this conveyance that same is a full settlement of all rights of the grantee herein in the estate of my deceased wife, and also is intended as a full conveyance to the grantee of any rights arising thereunder, and this conveyance, together with six other conveyances to my children, of even date, is made by me as a division of my estate, and a full and final settlement of all claims which said grantee may have against me in any manner. In order that the fact may be definitely known, I state further that in making such settlement I have paid in cash to my son Ruben Bennett the sum of twenty-two hundred dollars in cash, and to my son I. M. Bennett the sum of seven hundred seventy-nine dollars in cash—said payments being made to them so that the value of the lands conveyed to my said seven children, when taken in connection with said cash payments, are approximately equal."

The record before the Supreme Court revealed that in the deed conveying to Robert Bennett and I. M. Bennett the 145 acres of land, said vendees, as a part of the purchase price, had expressly assumed the payment of a then existing indebtedness of $5,000 due to the John Hancock Mutual Life Insurance Company and then secured by a deed of trust on said land. I. M. Bennett was married at the time said land was conveyed to him and his father, and the express assumption of the above mentioned indebtedness, in legal effect, bound not only Robert Bennett but I. M. Bennett and the latter's community estate to pay the same. The record further revealed that the deed from Robert Bennett to I. M. Bennett conveying the former's one-half interest in the 145 acres of land was dated October 22, 1917, and that there was a release executed by John Hancock Mutual Life Insurance Company dated November 19, 1917, reciting the payment of the $5,000 note. The deed from Robert Bennett to I. M. Bennett did not refer to said indebtedness. There was no evidence in that record as to any agreement entered into by Robert Bennett and I. M. Bennett and his other children, prior to the execution of said deed, in respect to the payment of said indebtedness. Robert Bennett and I. M. Bennett both died long prior to the institution of the suits above referred to.

The Supreme Court held that a one-half interest in the 145 acres of land vested at the time of its purchase in the community estate of I. M. Bennett and his wife, Dora E. Bennett. This was the holding of the trial court on the second trial, and such half interest is no longer in controversy.

In reference to the remaining one-half interest, the Supreme Court held that the burden was on the plaintiffs to prove that Robert Bennett paid off the indebtedness secured by lien on the 145 acres of land and conveyed the property to his son, I. M. Bennett, free of encumbrance; that there was no evidence in the record discharging that burden; that as the record then stood, it appeared that I. M. Bennett acquired the one-half interest from his father in part by onerous title, and that the onerous consideration was an obligation of the community. The court further said: "It is impossible to determine from the record what proportion of the consideration for this conveyance was the interest owned by I. M. Bennett in his mother's estate. There is no evidence of its value. Upon another trial, should it be established, as insisted by plaintiffs, that Robert Bennett discharged the indebtedness against this property for which his son, I. M. Bennett, had theretofore bound his community estate, and conveyed the one-half interest owned by him free of incumbrances, then the ruling of the trial court should be that a one-half interest in this property was the separate estate of I. M. Bennett. If, however, the contrary facts appear with reference to the payment of the indebtedness, evidence should be offered which will enable the court to determine the interests owned by the separate and community estates respectively." [133 Tex. 450, 128 S. W.2d 796.]

To meet this burden plaintiffs produced J. B. Harrell, who was not a witness at the first trial. He testified, over the objections of the defendants, in substance: That he was then eighty-three years of age; that he had known Robert Bennett for fifty years; knew his children and his wife, the circumstances of the latter's

death, and was familiar with the properties they owned; that Robert Bennett was not an educated man and usually signed his name by a mark; that Robert Bennett told him prior to Oct. 22, 1917, that he wanted to divide his entire estate among his children so that each of them would have a home clear of encumbrance; that it would be impossible to make the partition equal in acreage, but that what it lacked in acreage he would make up in cash; that he wanted the witness to help him make the partition and that he wanted each of his children to have property of the approximate value of $10,000 either in land or money. Witness testified that he and Robert Bennett went over the lands and placed a value on them; that as to I. M. Bennett, he learned from Robert Bennett that he and his son owned jointly a tract of 145 acres of land, for which they paid and which he then valued at $11,600; that when this land was bought they paid jointly and in equal amounts in cash the sum of $4,650, assumed a loan of $5,000 due the John Hancock Mutual Life Insurance Company, and executed their three notes for $650 each, totaling $1,950 payable to Englehart & Sturgess; that they each paid $900 or a total of $1,800, on the John Hancock Mutual Life Insurance Company note, leaving a balance of $3,200 due thereon at that time, and that Robert Bennett had paid the three notes totaling $1,950 due to Englehart & Sturgess; that Robert Bennett told him he would assume the payment of the balance due of $3,200 to the John Hancock Mutual Life Insurance Company, pay I. M. Bennett the sum of $1,625 in cash, and convey to his son the 145 acres of land, in order that I. M. Bennett's share might be of the value of $10,000. He further testified that Robert Bennett's financial condition was always good; that in the fall of 1917 the latter had funds with which he could have paid the above mentioned indebtedness; that if I. M. Bennett owned anything except the interest in the land, witness did not know it; that he had no funds that he knew of in the fall of 1917 with which he could have paid the indebtedness. When asked whether or not he knew that Robert Bennett had paid the $3,200, witness replied, "No Sir, only I know he said he would, and it is paid." Witness further testified that in the fall of 1917, I. M. Bennett's health was not good and that he never thereafter recovered his health.

Plaintiffs introduced in evidence on this trial, but not on the first, a contract executed by Robert Bennett as first party and by his children as second parties, dated October 1, 1917, providing in part as follows:

"Whereas, the mother of parties of the second part, wife of first party, is deceased; and whereas party of the first part is desirous of making equal and equitable distribution of the property now belonging to him among his said children, with certain reservations for his own maintenance and support, it is understood and agreed:

" 1. For and in consideration of the gifts and distribution herein made, parties of the second part specially agree" that they will each pay first party each year for the period of his life the sum of two hundred dollars.

"9½. It is agreed that the share of I. M. Bennett is $779.00 of less than an average value, and party of first part agrees to make up the deficiency in moneys.

"10. It is agreed that the premises set apart to Reuben Bennett are $2200.00 less in value than the other distributive parts, and that said deficiency shall be made good in moneys; that in addition to the land to be deeded to the said Reuben Bennett, party of the first part agrees to pay the sum of $1810.25.

"11. That, in consideration of all the foregoing, party of the first part obligates, binds, and agrees well and truly to make distribution by deeds of gift to parties of the second part; giving to them, his said heirs, all the lands now owned by him, the said Robt. Bennett, with the sole exception and reservation of 80 acres in Hill County, Texas; said distribution to be made forthwith by deeds, after the manner set forth in the last will and testament of the said Robt. Bennett; to which will reference is here made for the purpose of ascertaining the distributive shares of each of the said second parties."

The will referred to was not introduced in evidence. The contract provided that second parties would pay the costs of court accrued and to accrue in the settlement of the estate involved; and that they would pay all fees and expenses incurred in the preparation, acknowledging and recording of the several deeds which were to be executed by first party.

By deed dated October 22, 1917, and filed for record November 14, 1917, Robert Bennett conveyed to I. M. Bennett the 145 acres of land in controversy.

By instrument dated November 13, 1917, Robert Bennett released the 145 acres of land from the lien securing the three notes for $650 each executed by himself and I. M. Bennett as part of the purchase price therefor, which notes had been theretofore transferred to him by the payees. This release was filed with the County Clerk of Johnson County on November 14, 1917.

By instrument dated November 19, 1917, and filed with the County Clerk of Johnson County January 11, 1928, the John Hancock Mutual Life Insurance Company released the lien securing the note payable to it in the sum of $5,000, and which Robert Bennett and I. M. Bennett had assumed as part of the purchase price of the 145 acres of land. The record shows that this note, by its terms, was payable January 1, 1920.

E. H. Davis, State Manager for the John Hancock Mutual Life Insurance Company since 1910, although a witness on the first trial as to other matters, testified for the first time on this trial that the balance of $3,200 due on the above mentioned $5,-000 note was paid December 28, 1917; that he received notice in the Dallas office November 15, 1917, that the note would be paid, and that he immediately ordered all papers, including a release, so as to have the same ready for delivery; that he did not know whether this notice of the desire to pay this note was received by letter or in person. Witness further stated on cross examination that he had not examined his file to see how he received this notice, but in reply to a question from counsel for the Life Insurance Company, he stated that he had not found any of the correspondence in reference to this loan; that his office was transferred to the Southwestern Life Building in 1921 and many of the old files were discarded and that this file was perhaps one of those. He further testified that his card in reference to the note in question showed that all papers were sent to Robert and I. M. Bennett, Grandview, Texas; that the $5,000 note in question was in the possession, at the time of the trial, of the attorneys for the Insurance Company, and that he did not know how they got possession of it; that his testimony that the notice of desire to pay the note was received on November 15, 1917, was based on his usual method of attending to business; that at the time inquired about he was out of his office some.

The court admitted, over objection, and only as against the Insurance Company, testimony of Mrs. Dora Bennett, then deceased, given on the first trial, in substance, that prior to 1915 her husband, I. M. Bennett, had measles and was never able to do much work after that; that he never got over it; that the only way I. M. Bennett had of making money was on the farm; that they made nothing to sell except cotton; that an average crop was about 10 bales; that her husband borrowed on his life insurance to run the family.

Mrs. Deatherage, a daughter of I. M. Bennett, one of the plaintiffs, testified in effect, on both trials, that her father never recovered from the measles; that he tried to work all the time but would take sick spells and would have to stop and rest; that her father kept going down until he finally got to where he wasn't able to do anything and couldn't get out; that her mother and the children went to the field; that in respect to the earnings of her father and the family in the years 1915, 1916 and 1917, they were just making a living, getting by.

■ Defendants take the position that the testimony of J. B. Harrell above referred to, relating conversations with Robert Bennett and statements made by the latter with regard to the consideration for the conveyance by Robert Bennett to I. M. Bennett of the land in controversy, was not admissible because made at a time when Robert Bennett was not identified with the title to the land in any way, and because the same was hearsay and ex parte, it not being shown that such statements were brought to the attention of defendants at the time the loans were made; because such statements were made in preliminary negotiations and decisions on the part of Robert Bennett before the execution by him of the deed in question, and which were merged therein, and could not be used to vary or contradict its terms by showing the property thereby conveyed was the separate property of I. M. Bennett.

We overrule the assignments raising the foregoing proposition. The record shows that Robert Bennett died in 1919, I. M. Bennett in 1924, and Dora E. Bennett in 1938; the latter having departed this life after the first trial and before the second trial of this case. The statements of Robert Bennett to J. B. Harrell were made while the former was formulating and carrying out his intention and plan to convey to his children, in equal shares, the property inherited by them from their

mother, in which he had an estate for life, together with the major portion of his own estate as a gift. These statements were not contradictory of nor inconsistent with the terms and stipulations expressly set forth in the deed to I. M. Bennett, but rather serve to explain the intention of Robert Bennett and of I. M. Bennett and of their agreement and understanding in respect to the consideration expressed in said deed, as to which each of the defendants, by the recitations contained in the deeds, were put on inquiry. Johnson v. Elmen et al., 94 Tex. 168, 59 S.W. 253, 52 L.R.A. 162, 86 Am.St.Rep. 845. Said recitations not only put the defendants on inquiry, but disclosed and gave them actual knowledge that Robert Bennett was partitioning the estate of his deceased wife and also making a gift to I. M. Bennett. The testimony was admissible as statements made against interest and also as res gestae of the transaction because it explained and threw light on the motive, intent, purpose and plan of Robert Bennett in executing the deeds to his children, and especially the one to I. M. Bennett, and to show that the acts were probably done as planned. Wigmore on Evidence, 3rd Ed., Secs. 1020 and 1725; Goldman v. L. & H. Blum & Heidenheimer Bros., 58 Tex. 630, 641; 17 Tex.Jur., p. 613, sec. 256; p. 651, sec. 273; Prater v. Traders & General Ins. Co., Tex.Civ.App., 83 S.W.2d 1038; 20 American Jur., p. 314, sec. 337.

Defendants contend that the evidence is insufficient to support the finding made by the court that Robert Bennett paid the balance due on the $5,000 note to the John Hancock Mutual Life Insurance Company, the payment of which was assumed by Robert Bennett and I. M. Bennett in the deed to them as part of the purchase price of said land. They also contend that even though it should be held that this testimony is sufficient to support the finding that Robert Bennett did in fact pay the note, the evidence is insufficient to sustain the finding by the court that the half interest in the land conveyed by Robert Bennett to I. M. Bennett became the latter's separate estate, because the evidence conclusively shows that the note was not paid until December 28, 1917, the date of the deed to I. M. Bennett being October 22, 1917, the Supreme Court having held in this case that before such interest could be deemed the separate property of I. M. Bennett, it must be shown that Robert Bennett conveyed the same to I. M. Bennett free of encumbrances.

We overrule the assignments raising the foregoing propositions. There was evidence adduced from J. B. Harrell, for the first time on this trial, disclosing the details of the intent, plan and purpose of Robert Bennett, and that the latter desired to convey to each of his children a home free of liens and of the value of approximately $10,000. This witness further testified that Robert Bennett had agreed to pay, and was in the fall of 1917 possessed of the means to pay, the indebtedness against the land in question. There was evidence from which the inference could be drawn that I. M. Bennett did not possess the means to pay the same. It is undisputed that the Insurance Company received notice by November 15, 1917, that it was desired to pay this debt two years before it was due, and that such indebtedness was in fact paid December 28, 1917. The evidence discloses that Robert Bennett carried out his plan of division in respect to his other children. In order that Robert Bennett's intention in respect to I. M. Bennett be carried out and completed, it was necessary for him to pay this indebtedness for two reasons: First, in order that his son, I. M. Bennett, might have a home free of encumbrances, as he had expressly stated was his desire; and second, that the share conveyed by him to I. M. Bennett might equal in value $10,000, the value which he was conveying to the remainder of his children. In the deed from Robert Bennett to I. M. Bennett it is not provided that the latter would either assume, or take the land subject to, the indebtedness to the Insurance Company. Shortly prior to the execution by Robert Bennett of the deeds to his children, they had executed a deed to him conveying all their interest in their mother's estate. If Robert Bennett had not paid the $3,200 to the Insurance Company which was secured by a lien on the land he conveyed to I. M. Bennett, it is evident that the latter would have received very little in the division. The deed to I. M. Bennett recites that his father was paying him $779 "so that the value of the lands conveyed to my seven children, when taken in connection with said cash payments, are approximately equal." It was necessary for the $3,200 to have been paid by Robert Bennett for the foregoing statement to be true. There was no evidence from the Insurance Company that the files and records at its home office had been searched

in respect to this transaction, or as to what, if anything, such records revealed as to who actually paid the balance due on said debt.

The plan and purpose of Robert Bennett in respect to the division among his children, and especially in respect to I. M. Bennett, could not be effectuated by one act. The several acts and transactions necessary to be done to effectuate his intention were but component parts of one continuing transaction; they were steps taken to effectuate the several aspects of his plan. What legal difference then did it make that one act was performed before another, if it were contemplated by the parties that each one of the acts which were actually performed would necessarily have to be performed before the transaction was closed and the intention carried into full effect? In our opinion, the facts in evidence and the inferences which could properly be drawn therefrom were sufficient to sustain the finding of the trial court that Robert Bennett did pay the balance of the $3,200 due on the debt in question. We are further of the opinion, from the facts in this case, that such payment related back to and became effective as of the date of the deed from Robert Bennett to I. M. Bennett. We think that, as applied to the state of facts revealed by the record before us, the equitable principle should apply that that is considered as done which ought to be done, and that, as between the parties, the lien should be held to be discharged. Johnson v. Elmen, 94 Tex. 168, 59 S.W. 253, 52 L.R.A. 162, 86 Am.St.Rep. 845. The rule seems to be that the character of title is to be determined by the transaction in which it was acquired, that is, in the inception of title. Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529, point 12; John Hancock Mutual Life Ins. Co. v. Henry L. Bennett, 133 Tex. 450, 128 S.W.2d 791. Applying this rule to the facts in this case, we are of the opinion that the evidence is sufficient to support the trial court's conclusion of law that in legal effect Robert Bennett conveyed his half of the land to I. M. Bennett as the latter's separate property, free of encumbrances.

 For the reasons hereinabove set forth, we overrule the assignment of the defendant Insurance Company that I. M. Bennett had permitted his separate property and community property to be so commingled that the separate could not be identified from the community property; and for the same reasons, we also overrule the assignment that the trial court erred in finding that neither the annual payments nor the other stipulations of the deed or contract of division were intended to be onerous considerations for the land because there was no evidence to support the same, and for the additional reason that this proposition was decided against the contentions of the defendant Insurance Company by the Supreme Court on the former appeal.

 . It is the contention of the Insurance Company that since its deed of trust is first in point of time, and since the evidence showed that the 70 acres covered by its deed of trust were less valuable than the remaining 75 acres, it was entitled to have the court set aside the tract of 70 acres to it in fee simple; that the trial court committed error in not recognizing its right to apply the doctrine of equitable partition, and in holding that it would be inequitable to the Commerce Trust Company, as well as to plaintiffs, to decree equitable partition in favor of the Insurance Company, and that the latter company was guilty of laches in asserting such plea.

We overrule this contention. Each of the original causes of action consolidated herein was filed by plaintiffs on December 12, 1935. The suit against the Insurance Company was in trespass to try title to the 70-acre tract; the one against the Loan Company was a like suit for the 75-acre tract. The Insurance Company had full knowledge of the facts from the time this original suit was filed, knew that the Loan Company had gone into possession of the 75-acre tract, and elected to defend its title under its deed of trust and the quitclaim deed which it accepted from Mrs. Dora Bennett, without asserting its right of equitable partition until after the two suits were consolidated by the trial court in 1940, after the Supreme Court had reversed and remanded the cause of action against the Insurance Company. It would appear to be the rule that the right of equitable partition cannot be invoked as a matter of absolute right, but only when the facts and circumstances render this course equitable. Merriweather v. Jackson, Tex. Civ.App., 38 S.W.2d 599. There is evidence in the record that the children of I. M. Bennett (except Henry L. Bennett, who signed the deed of trust to the Insur-

ance Company with his mother), did not know that their mother had given a deed of trust to the Insurance Company on the land here involved until long afterwards. There is also evidence that some of the same children, in ignorance of the prior deed of trust executed by their mother to the Insurance Company, gave their consent for their mother to execute the deed of trust to the Loan Company on a portion of the land thereby conveyed. The trial court held that certain of these children, because they had given their consent thereto, were estopped to deny the title of the Loan Company as to the land which they had consented for their mother to mortgage. Therefore, if the Insurance Company's plea of equitable partition should be allowed, the 70-acre tract would be set aside to it in fee or against each of the children of I. M. Bennett, although the latter are not found to be at fault. But the court, as above stated, has denied some of the plaintiffs a right of recovery in the west 45 acres of the 75 acres conveyed by the deed of trust to the Loan Company. The effect of this would be to limit these plaintiffs to a recovery of only their pro rata share of the east 30 acres of the 75-acre tract, and they would receive nothing to recompense them for the loss of their right to share pro rata in the 70-acre tract claimed by the Insurance Company, although they were not found to have done or failed to do any act which would, in law or equity, deprive them of this right. The evidence also discloses that the Insurance Company accepted the deed of trust on the 70-acre tract as additional security for a pre-existing debt owing to it by Mrs. Dora Bennett and secured by a deed of trust on another 100-acre tract, except for the sum of $107.50, which it advanced at the time the deed of trust was accepted by it. There is no evidence of the value of the 100-acre tract, or that its value was insufficient to pay the indebtedness to the Insurance Company. On the other hand, it appears that the Loan Company, relying on its deed of trust, actually paid out the sum of $3,121.38. We are of the opinion that there was sufficient evidence in the record to sustain the finding of the trial court complained of.

■■ The trial court adjudged that the plaintiffs recover rents equal to the entire separate estate of their father in the property recovered by them. This is assigned as error by the Loan Company because all of the land in question was the homestead of Mrs. Dora Bennett and she had the exclusive right to all of the rents therefrom until she died or abandoned her homestead right, and there being no evidence of such abandonment, her children had no right of recovery for rents which accrued during her life. The plaintiffs filed a remittitur of one-third of the amount of rents awarded them because of the fact that their mother, on the death of their father intestate, had inherited a life estate in her husband's separate estate, which passed to the Loan Company under her deed of trust.

We overrule the foregoing assignment. The court found that Mrs. Bennett and her children removed from the land in question when the Loan Company foreclosed in January, 1934, and that the latter immediately went into possession. It was stipulated by the parties, and dictated into the record by the Loan Company's attorney, that Mrs. Bennett ceased to occupy its security when it foreclosed; that thereupon the Loan Company went into possession and remained in possession since said time. In our opinion, there was sufficient evidence in the record to support the implied finding of the trial court that Mrs. Dora Bennett gave possession of the land in controversy to the Loan Company when it foreclosed under its deed of trust executed by her and thereby abandoned her homestead rights therein. This right was a personal right and could not be sold or conveyed by her to the Loan Company and did not pass to the Loan Company on foreclosure of their deed of trust. York v. Hutcheson, 37 Tex.Civ.App. 367, 83 S.W. 895.

■ The defendant Loan Company contends that the evidence shows as a matter of law that plaintiffs acquiesced in and ratified Mrs. Bennett's acts in mortgaging the land in controversy, waived her lack of authority so to do, and are estopped to assert the invalidity of such mortgage and the title of the defendant Loan Company acquired thereunder.

We overrule the assignments raising the foregoing proposition. It would serve no useful purpose and would over-extend the length of this opinion to set out the evidence pertinent to this inquiry. Suffice it to say that we have carefully examined the statement of facts, and have reached the conclusion that the same presents disputed issues of facts in reference to the defense of waiver and estoppel, and that the evidence was sufficient to support the trial

court's findings of fact and conclusions of law in respect to the matters complained of.

We have carefully considered each of the assignments of error urged by each of the defendants, and being of the opinion that each of same is without merit, each of said assignments is accordingly overruled.

Judgment affirmed.