## WALKER v. SIMONS et al.
### No. 2964.

Court of Civil Appeals of Texas. Waco.
Oct. 18, 1951.

Rehearing Denied Nov. 21, 1951.

Barney A. Garrett, Waco, for appellant.
Conway & Scharff, Waco, for appellees.

TIREY, Justice.

This is a suit to recover 3.47 acres of land in McLennan County. On January 4, 1943, appellant purchased a tract of land in Mc-Lennan County, "being estimated as 62 acres more or less"; in November, 1945, he filed his original petition in trespass to try title to recover the above tract; in June, 1947, he filed his second amended original petition which was in three counts, the first count being a suit in trespass to try title, and in the second he alleged substantially that it was the mutual intention of the parties at the time the trade was made to convey the 3.47 acre tract in the original deed, and in the third count he charged the defendants, R. L. Betz and wife, Mary Betz, C. S. Simons and wife, Hattie Simons, with fraud and sought in effect to reform the deed so as to include the 3.47 acre tract, and also sought to cancel a deed from defendant Betz and wife to E. G. Black and wife, which deed conveyed a 1.66 acres out of the 3.47 acre tract. This is the second appeal of this case. See 197 S.W.2d 223.

On the second trial the defendants seasonably filed their motions for instructed verdict, which the court overruled, and the case was submitted to the jury. The jury in its verdict found substantially (1) that defendant Simons, in making the trade

with plaintiff Walker, did not represent to Walker that the tract of land he was selling to Walker included the 3.47 acres of land; (4) that defendant Betz did not represent to Walker that the land Simons was selling to Walker included the 3.47 acres of land; (8) that defendant Betz and Simons were not acting jointly in effecting the sale of the land to Walker; (10) that the reasonable cash market value of the land on January 14, 1943 described in the deed from Simons and the Calvert State Bank to Walker was $3000; (10–A) that the reasonable cash market value on January 14, 1943 of the tract of land described in the deed from Simons and the Calvert State Bank to Walker, plus the 3.47 acres of land in controversy, was $3075; (11) that in the deed from Betz to Simons of the 62 acres of land, more or less, the 3.47 acres of land in controversy was not left out through mutual mistake between the defendant Betz and the defendant Simons; (12) that in the deed from Simons to Walker of the 62 acres of land more or less, the 3.47 acres of land in controversy was not left out through mutual mistake between the defendant Simons and the plaintiff Walker; (13) that in the purchase of the tract of land by Walker from Simons, that Mrs. Mary Betz was not acting as agent for her brother C. S. Simons; (14) that in the purchase of the tract of land by Walker from Simons that Mrs. Mary Betz was not acting as agent for her husband R. L. Betz.

The defendants seasonably filed motion for judgment, which was granted, and in the judgment the court found that after considering the verdict of the jury and the undisputed evidence the trial court made the following findings of fact, to the effect: (1) that Walker had no title or interest in the 3.47 acre tract of land in controversy; (2) that E. G. Black and Edith M. Black are the owners by fee simple title of 1.66 acres of land described in the deed from R. L. Betz and wife to E. G. Black and wife; (3) that R. L. Betz is the owner in fee simple of the title of the 3.47 acres of land in controversy, less the 1.66 acres of land above referred to; (4) that R. J. Walker is the owner of a windmill complete, windmill tower, elevated tank, tank tower, pipes, and equipment used in connection with said windmill, tank, and tower situated on approximately one acre of land out of the south end of the 44 acre tract of land conveyed to R. L. Betz by R. F. Brown and referred to the deed, with the right of ingress and egress over and upon said one acre of land in and to said well and said windmill, tower and tank tower, for the purpose of taking water from said well to be used in connection with said 62 acre tract of land conveyed to Walker by the Citizens State Bank of Calvert and C. S. Simons and wife, and that except as to said rights Walker had no right, title and interest in and to said land.

The decree followed the verdict of the jury and the findings of the trial court. Walker seasonably perfected his appeal.

Appellant, in oral argument, stated that the evidence was sufficient to sustain the findings of the jury, but says the judgment should be reversed and remanded for seven procedural errors made over the timely objection of appellant. After a careful examination of the record we are of the opinion that under the undisputed evidence the court should have granted defendants' motion for an instructed verdict and the alleged errors of procedure became immaterial and we do not pass upon them. Because of the foregoing view a statement is necessary.

Defendant Betz, by various purchases beginning on October 6, 1916 and ending November 17, 1924, acquired 74.68 acres of land. Thereafter McLennan County took 6.14 acres for a public highway, leaving Betz the balance of 68.54 acres and about 6½ acres of the tract lay in what is designated as the "little neck" on the west side of the highway, forming the south point of the land which lay to the west of the highway. This 6½ acre tract was a part of the original purchase of a tract of 26.67 acres made by Betz from Brown on October 6, 1916, and at that time Betz was a single man. The 3.47 acres of land in controversy was at the north end of this "neck" and was out of the tract owned by Betz as his separate property. "The status of property as separate or community

is fixed as of the time of the inception of the title." See John Hancock Mutual Life Ins. Co. v. Bennett, 133 Tex. 450, 128 S.W. 2d 791, point 1, at page 795. See also: Welder v. Lambert, 91 Tex. 510, 44 S.W. 281, at page 3; Van v. Webb, Tex.Civ.App., 237 S.W.2d 827, p. 2 (writ ref.N.R.E.); Welder v. Commissioner of Internal Revenue, 5 Cir., 148 F.2d 583, point at page 585; 21 Tex.Dig. Husband and Wife, ⊂⊃249. At the time Betz acquired the foregoing tract his father and mother and sister were living and he used this tract as a home for his father and mother, and the sister still lives on this tract. On November 6, 1940, defendant Betz and wife conveyed to his wife's brother, C. S. Simons, 62 acres out of the 68.54 acres which he owned at that time. Judge James R. Jenkins, who prepared this deed, testified to the effect that he was instructed by Betz to draw the conveyance to Simons so as to keep all of the land which was located in the "neck" designated for the use of Betz' sister; that he was very careful in working out the field notes and drafting the deed from Betz to Simons and had in his possession the carbon copy of such deed and a memorandum of the figures and calculations that he made and the original plat that he drew and followed; that in this plat he labeled the respective tracts which Betz had acquired, the person from whom he acquired it, and the book and page where the deeds were recorded; he outlined the boundaries in red pencil of the lands Betz was conveying to Simons and showed the 5.2 acres in the "neck" and made the notation thereon, "Betz kept. About 5.2 acres now used by Betz' sister;" that he had been instructed by Betz not to include the 5.2 acres in the conveyance to Simons and he followed such instructions in the preparation of the deed from Betz to Simons, and that these notations in the exhibits that he had and testified about were all made by him at the time he did this work and had been kept by him through the years. Judge Jenkins further testified with reference to the preparation of the deed from Betz to Simons: "Mr. Betz came to my home office a few weeks before the date of this deed to Mr. Simons and told me that he was selling all of the land he had down there near that crossing of the Hillside road and State highway to his brother-in-law, C. S. Simons, except a few acres—he didn't know how many acres there was, four or five acres, he told me he had in that corner that he was reserving for his sister. It had the house on it where she was living then, and had for many years, and he asked me to prepare the deed conveying all of the other land except that and a little small tract of an acre across the road, just in the corner of the cemetery, all the other land except those little acreages, to Mr. Simons, and after I had figured it out, I figured it amounted to 5.2 acres on the west side of the State highway and .8 on the east side, in the corner of the cemetery."

The testimony of Judge Jenkins on the above matters is direct and positive and there are no circumstances in the record tending to discredit or impeach his testimony. Assuming without deciding that Judge Jenkins was an interested witness, the rule is " * * * when the evidence of an interested witness is direct and positive on the point at issue and where there are no circumstances in the record tending to discredit or impeach his testimony, a verdict contrary thereto will be set aside, that such testimony will justify an instructed verdict, and that a judgment contrary thereto may be reversed and rendered." See Dunlap v. Wright, Tex.Civ.App., 280 S.W. 276, point 6, at page 279, and authorities there collated. (Our courts have never departed from this rule).

In this case Walker is attempting to engraft a mutual mistake in the deed from Betz to Simons. Simons, the grantee in the above deed, was a brother of Mrs. Betz. Simons permitted Walker to move on the place before the trade was closed and Walker went on the land in November, 1942. Pertinent to this discussion Walker testified as follows:

"Q. After you moved out to Rosenthal did you have any conversation with Mr. Betz about this little neck? A. Yes, we had one talk about it. He came down to my house one night and got me and we went up and he told me I wasn't buying

that neck. I told him I understood I was buying it; that I was buying everything enclosed under that fence; that was what his wife and Mr. Simons both told me I was getting, according to their statement, and if I wasn't I wouldn't have bought the place.

"Q. Would you have bought the place if you had known you were not getting that neck? A. I would not.

"Q. Did you believe the representation they gave you that you were getting all under that fence? A. Yes, sir.

"Q. Did you rely on those statements? A. I certainly did.

\* \* \* \* \* \*

"Q. The first time you talked with Mr. Betz he told you you didn't get that part of that neck down there? A. He told me I didn't buy this neck in here down to this little fence, and I told him 'yes, I did.' I said 'your wife and Mr. Simons told me I was buying that.'

"Q. But Mr. Betz told you the first time he ever talked with you you didn't get that? A. He just told me that didn't go with it.

"Q. And you don't recall whether that was before or after you got your deeds? A. No, sir.

"Q. And that was the first and only talk you had with Mr. Betz? A. That's right.

"Q. And upon that occasion Mr. Betz told you you didn't get that land from Simons? A. He told me that, and I also told him I did buy it.

"Q. But he told you upon that occasion he had reserved that neck for his sister, didn't he? A. No, he just said Simons didn't sell me that tract of land and I told him he did 'or him and your wife misrepresented it to me.' I said 'if I didn't buy this neck in here I have been misled and your wife and Mr. Simons just flat misrepresented it to me.'"

Walker further testified to a conversation he had with Mr. and Mrs. Betz and Mr. Simons, as follows:

"They told me that was—Mr. and Mrs. Betz told me that was Mr. Simons' windmill and tank and that they gave him the right to get water out of the well. I told

them I wanted an agreement to that effect and she told me they would give me one. \* \* \* They both told me everything went that was under fence in there except that one acre of ground there, that ground and the old house didn't go with it, that they reserved that. \* \* \* Mr. and Mrs. Betz talked about the well, and me and Mr. Simons both talked about the well—Mrs. Betz told me everything out there belonged to Mr. Simons under fence; that they had about one acre reserved where the house was and that the windmill and tank belonged to Mr. Simons, and that he got water out of the well. I said, 'If that's the case, I want an agreement to that effect, and also showing what you all own' and she said they would.

"Q. Did they give you one? A. Yes, sir.

"Q. Was this conversation before you got your deed and closed the trade, or afterward? A. It was just before I got it."

The evidence is without dispute that the 3.47 acres of land was the separate property of Betz; that Walker was fully advised while the trade was still pending and before he got the deed and before he paid the purchase price that no part of the land which he was buying lay within the "neck" and that it did not include the 3.47 acres of land sued for. There is no evidence that the 3.47 acres of land sued for was left out of the deed from Betz to Simons through the mutual mistake or otherwise of the grantors and grantees, but on the contrary the evidence precludes it.

The agreement referred to in Walker's testimony just above quoted (sometimes referred to in the record as the water rights agreement) and the deed from Simons to Walker were prepared by the attorney who examined the abstract of title for Walker, and such agreement provides in part: "Whereas, thereafter R. L. Betz and wife, Mary Betz, *conveyed by their General Warranty Deed to C. S. Simons approximately 62 acres of said land, which deed is recorded in Vol. 486, page 623 of the McLennan County Deed Records, to which reference is here made for a full and complete description of the land conveyed to C. S. Si-*

*mons,* the said R. L. Betz and wife, Mary Betz, reserving to themselves and out of the tract of land they owned and not conveyed to C. S. Simons, approximately one (1) acre of land, more or less, out of the south portion of said 63 acres of land, more or less, which tract reserved to and not conveyed by R. L. Betz and wife, Mary Betz, lies immediately west and adjoining new Highway No. 44 and out of the south portion of said approximately 63 acres of land on which reserved tract is a well, windmill, elevated tank, towers, pipes and well equipment; and Whereas, C. S. Simons and wife have entered into a contract with R. J. Walker under which said contract *the said C. S. Simons and wife, Hattie Simons, have agreed to convey to R. J. Walker the said 62 acres of land heretofore conveyed by R. L. Betz and Mary Betz to C. S. Simons as hereinabove set out,* for the consideration of Three Thousand ($3000.00) Dollars, *and also to convey for the same consideration and as a part of said transaction the windmill, elevated tank, towers, piping, pipe fittings and equipment which are located upon the reserved tract now owned by R. L. Betz and wife, Mary Betz, and also the right to use water from the well located on said reserved tract, with* the right of ingress and egress for said purposes." (Emphasis ours). There is no language in the water rights agreement that binds Betz to convey to Walker any part of the land that he reserved and did not convey to Simons at the time he executed and delivered his deed to Simons.

The deed from Simons to Walker was dated January 4, 1943, and was executed by Simons and his wife on January 7, 1943. The water rights agreement (*upon which appellants rely in part to tender the issue of mutual mistake*) was dated January 4, 1943, and was executed by Betz and wife on the 11th of January, 1943. Under this record the evidence is without dispute that the conversations Walker had with Simons or Mr. and Mrs. Betz took place before the execution and delivery of the deed from Simons to Walker and before the execution and delivery of the water rights agreement. Walker's attorney examined the abstract covering this land and it contained the deed

from Betz to Simons and such deed does not include by description the 3.47 acre tract of land. The field notes in the deed from Simons to Walker are the same as in the deed from Betz to Simons and there is no contention that the deed from Simons to Walker contained by description the 3.47 acres of land, nor does the deed from Betz to Simons state the amount of acreage that Betz kept for his sister. The amount of the acreage kept by Betz out of the various tracts he owned and did not convey to Simons is found only in the testimony of Judge Jenkins and not elsewhere in this record. Judge Jenkins testified specifically to the effect that before he prepared the deed from Betz to Simons that Betz carefully instructed him not to include in the deed the 5.2 acre tract in the "neck". As we have stated before, Judge Jenkins' testimony is undisputed and there are no circumstances in the record tending to discredit or impeach his testimony. Nor did any witness testify to the effect that it was the intention of Betz or Simons to include the 3.47 acres of land here in question in the deed from Betz to Simons, nor that such acreage was left out of the deed from Betz to Simons through the mutual mistake of grantors and grantees in such deed. On the contrary the testimony tendered precludes such contention.

It is our view that the evidence does not tender the issue of fraud, accident or mistake as to the intention of the parties in the deed from Betz to Simons, nor to the deed from Simons to Walker, and the construction of these deeds and the water rights agreement was a matter for the court. Under the foregoing circumstances it was the duty of the trial court to construe such deeds and water rights agreement and in so doing he was bound by the rules of construction heretofore announced by our Supreme Court. "The dominant purpose in construing a deed is to ascertain the intention of the parties as expressed in the deed itself; and such intention expressed therein is a controlling factor. * * * If there be doubt as to what the intention of the parties was, due to the language of the deed, such doubt should be resolved against the grantor. * * *

"It is the rule that the intention of the parties must be gathered from the entire instrument, and not from some isolated clause or paragraph. The entire instrument must be construed as a whole in order to arrive at the intention of the parties." See Bumpass v. Bond, 131 Tex. 266, 114 S.W. 2d 1172, 1174, points 1–4 incl., and authorities there collated. In Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442, 443, we find this statement: "The ultimate purpose in construing a deed is to ascertain the intention of the grantor. * * * 'In all contracts, including deeds, the intent of the parties, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law.' * * * the prime object and purpose of rules of construction is to enable the courts to ascertain and give effect to the true intention of the parties. The authorities uniformly seek and give controlling effect to intention." The water rights agreement specifically refers to the deed from Betz to Simons for an accurate description of the land which was conveyed by Betz to Simons, as well as an accurate description of the land that was conveyed by Simons to Walker, and all the parties to the water rights agreement are and were bound by this definite and fixed description of the field notes set out in these respective deeds. The rule is " 'A general description may be looked to in aid of a particular description that is defective or doubtful, but not to control or override a particular description about which there can be no doubt.' 14 Tex. Jur., Sec. 247, p. 1040." Sun Oil Co. v. Burns, supra, point 7, p. 447. See also McAnally v. Texas Co., 124 Tex. 196, 76 S.W. 2d 997, and authorities there collated; also 15 Texas Digest, Deeds, ☜114. There is no evidence that the particular description in the deed from Betz to Simons is doubtful or that it failed to convey by metes and bounds the 62 acres estimated in the deed, said deed providing "and being estimated as 62 acres more or less." See Wooten v. State, 142 Tex. 238, 177 S.W.2d 56, point 1. There is no wording in the water rights agreement which tenders the issue that there was a mistake, mutual or otherwise, in the field notes in the deed from Betz to Simons or from Simons to Walker. It is true that in the water rights agreement we find that after it refers to the deed from Betz to Simons for a full and complete description of the land conveyed to Simons the water rights agreement then states: " * * * the said R. L. Betz and wife, Mary Betz, reserving to themselves and out of the tract of land they owned and not conveyed to C. S. Simons, approximately one (1) acre of land, more or less, out of the south portion of said 63 acres of land, more or less, which tract reserved to and not conveyed by R. L. Betz and wife, Mary Betz, lies immediately west and adjoining new Highway No. 44 and out of the south portion of said approximately 63 acres of land on which reserved tract is a well, windmill, elevated tank, towers, pipes and well equipment; * * * ". But the deed from Betz to Simons makes no attempt to describe by metes and bounds or otherwise the balance of the Betz tracts unsold, and since the water rights agreement binds the parties to the description in the deed from Betz to Simons, and since the above clause does not say that the 3.47 acres in controversy was left out by virtue of the mutual mistake of the parties, and since said clause makes no attempt to convey such tract in the "neck" but specifically states that Simons and his wife have agreed to convey to Walker the 62 acres of land heretofore conveyed by Betz to Simons and for the same consideration Simons is to convey as a part of said transaction "the windmill, elevated tank, towers, piping, pipes and well equipment which are located upon the reserved tract now owned by R. L. Betz and wife, Mary Betz, and also the right to use water from the well located on said reserved tract, with the right of ingress and egress for said purposes", it is our view that the water rights agreement fails to tender any issue of fraud, accident or mistake in the execution of the deed from Betz to Simons. It is our view that the water rights agreement had the effect to state (1) that the particular description in the deed from Betz to Simons was the land that Simons had conveyed or was to convey to Walker, and (2) that it was the intention of Simons to sell, convey and set over to Walker the same water rights that Simons had enjoyed from

Betz and to define these water rights and personal property therein designated so as to avoid any mistake about the same. Such being our view, the trial court should have granted defendant's motion for instructed verdict, and appellant's contentions as to procedural errors pass out of the case.

Since the court entered judgment for defendants and such decree is not assailed by defendants, the judgment of the trial court is in all things affirmed.

HALE, Justice (dissenting).

I do not concur in the majority opinion. It appears to me that the descriptive data contained in the deed dated November 6, 1940, from Betz and wife to Simons is too vague, indefinite and uncertain to warrant this court in concluding as a matter of law that the 3.47 acres in controversy was or was not included in the description of the 62 acres, more or less, therein conveyed. This deed describes the property generally as being a part of seven separate tracts described in various deeds to Betz totalling 92 acres, including "a certain 44 acre tract described in deed from R. F. Brown to R. L. Betz dated October 16, 1916." This deed then purports to describe specifically by metes and bounds as one tract the 62 acres, more or less, therein conveyed. The field notes in this deed are extremely compli-cated, covering three typewritten pages in the statement of facts. They include 24 different calls for distances which run in 15 different directions, some of the distances being expressed in terms of varas and others in terms of yards or feet, several of such distances being modified by the expression "more or less". The only land expressly excepted from the conveyance as described in this deed is 4.13 acres, more or less, as shown by prior deed from Betz and wife to McLennan County for highway purposes.

Furthermore, it appears to me that the majority opinion on the present appeal of this case is in conflict with the prior opinion and holding of this court on the former appeal as reported in 197 S.W.2d 223. If the evidence to which we referred in the former opinion was sufficient to take the pleaded case to the jury, as I think it was, then I fail to see how or why the evidence referred to in the majority opinion on the present appeal should have required the trial court to instruct the jury to return a verdict for appellees. Since this court decided on the former appeal that the evidence relied upon by appellant was sufficient to take his case to the jury, it is my opinion that we should now consider and decide one or more of the points of error upon which this appeal is predicated.