IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 02-0381
════════════
 
F.F.P. Operating Partners, 
L.P., D/B/A Mr. Cut Rate #602, Petitioner,
 
v.
 
Xavier Duenez and Wife Irene 
Duenez, as Next Friends of Carlos Duenez and Pablo Duenez, Minors, 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued November 
30, 2005
 
 
Justice Wainwright delivered the opinion 
of the Court, in which Justice Hecht, 
Justice Brister, Justice Medina, Justice Green, Justice Johnson and Justice Willett joined.
 
Chief Justice Jefferson filed a 
dissenting opinion.
 
Justice O’Neill filed a dissenting 
opinion.
 
 
On December 
12, 2002, we granted this petition for review, and on September 3, 2004, the 
Court issued an opinion. On April 8, 2005, we granted the petitioner’s motion 
for rehearing, re-argued the case, and issued an opinion on November 3, 2006. 
Today we deny the respondents’ motion for rehearing. We withdraw our opinion of 
November 3, 2006 and substitute the following in its place.
We are asked 
to revisit our holding in Smith v. Sewell that the proportionate 
responsibility scheme of chapter 33 of the Texas Civil Practice and Remedies 
Code requires an apportionment of responsibility under chapter 2 of the 
Alcoholic Beverage Code. 858 S.W.2d 350 (Tex. 1993). We decline the invitation 
to reverse Sewell and instead affirm its holding that the language of the 
proportionate responsibility statute includes claims under the Dram Shop Act. 
Neither the purpose nor the language of the Act makes a dram shop automatically 
responsible for all of the damages caused by an intoxicated patron, regardless 
of a jury’s determination of the dram shop’s proportion of responsibility. 
Instead, pursuant to Chapter 33, a dram shop is responsible for its 
proportionate share of the damages as determined by a jury. Accordingly, we 
reverse the court of appeals’ judgment and remand the case for a new trial.
 I. Factual and Procedural Background 
After 
spending the day cutting firewood while consuming a case and a half of beer, 
Roberto Ruiz drove his truck to a Mr. Cut Rate convenience store owned by F.F.P. 
Operating Partners, L.P. and purchased a twelve-pack of beer. The store’s 
assistant manager, Carol Solis, sold the beer to Ruiz. Ruiz then climbed into 
his truck, opened a can of beer, and put the open beer can between his legs. 
There was conflicting testimony about whether Ruiz actually drank any of the 
beer that he purchased at Mr. Cut Rate.
Ruiz then 
drove onto a nearby highway and swerved into oncoming traffic several times. Two 
cars dodged his truck to avoid a collision. As he crossed a bridge approximately 
a mile and a half from the Mr. Cut Rate convenience store, Ruiz swerved across 
the center line, hitting the Duenezes’ car head-on. All five members of the 
Duenez family suffered injuries. 
Ruiz was 
arrested at the accident scene for drunk driving. He pled guilty to intoxication 
assault and was sentenced to prison. The Duenezes brought a civil suit against 
F.F.P., Ruiz, Solis, Nu-Way Beverage Company, and the owner of the land where 
Ruiz had spent the afternoon cutting firewood and drinking. F.F.P. filed a 
cross-action against Ruiz, naming him as a responsible third-party and a 
contribution defendant. The Duenezes thereafter nonsuited all defendants except 
F.F.P.
At the 
pretrial conference, the Duenezes obtained a partial summary judgment that 
chapter 33 of the Texas Civil Practice and Remedies Code, the proportionate 
responsibility statute, did not apply to this case. The trial court then severed 
F.F.P.’s cross-action against Ruiz, leaving F.F.P. as the only defendant for 
trial. F.F.P.’s severed action against Ruiz remains pending in the trial court. 

The Duenezes’ 
claim against F.F.P. proceeded to trial. At the charge conference, the trial 
court refused to submit questions for determination of Ruiz’s negligence. The 
court also failed to submit questions on the proportionate responsibility of 
Ruiz and F.F.P. 
The jury 
found that when the alcohol was sold to Ruiz, it was “apparent to the seller 
that he was obviously intoxicated to the extent that he presented a clear danger 
to himself and others,” and that Ruiz’s intoxication was a proximate cause of 
the collision. The jury returned a $35 million verdict against F.F.P., upon 
which the trial court rendered judgment. 
The court of 
appeals affirmed the trial court’s judgment, holding:
 
[I]n 
third-party actions under the Dram Shop Act in which there are no allegations of 
negligence on the part of the plaintiffs, a provider is vicariously liable for 
the damages caused by an intoxicated person, and such a provider is not entitled 
to offset its liability by that of the intoxicated person.
 
 
69 S.W.3d 800, 
805. In reaching that conclusion, the court distinguished our decision in 
Sewell, in which we held that the comparative responsibility statute 
applied to dram-shop causes of action. Id. The court of appeals concluded 
that Sewell’s holding was limited to first-party actions in which the 
intoxicated patron is suing for his own injuries and is inapplicable when the 
plaintiff is an innocent third party injured by an intoxicated patron. 
Id. at 805-06. The court also held that the trial court did not abuse its 
discretion in severing F.F.P.’s contribution claim against Ruiz, concluding that 
because F.F.P.’s statutory liability was vicarious and not direct, F.F.P. had an 
indemnity claim rather than a contribution claim against Ruiz. Id. at 
807-08. 
We granted 
F.F.P.’s petition for review. While the petition was pending, Xavier, Irene, and 
Ashley Duenez settled their claims against F.F.P. Only the claims of Pablo and 
Carlos Duenez against F.F.P. remain before the Court. 
II. Statutory Interpretation
            
Statutory construction is a legal question that we review de novo, ascertaining 
and giving effect to the Legislature’s intent as expressed by the plain and 
common meaning of the statute’s words. Tex. Dep’t of Transp. v. City 
of Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004).
A. The Dram Shop Act
The 
Legislature enacted the Dram Shop Act to “deter providers of alcoholic beverages 
from serving alcoholic beverages to obviously intoxicated individuals who may 
potentially inflict serious injury on themselves and on innocent members of the 
general public.” Sewell, 858 S.W.2d at 356. Section 2.02 of the Alcoholic 
Beverage Code sets forth the scope and elements of this action:
 
 (a) 
This chapter does not affect the right of any person to bring a common law cause 
of action against any individual whose consumption of an alcoholic beverage 
allegedly resulted in causing the person bringing the suit to suffer personal 
injury or property damage.
 
 (b) 
Providing, selling, or serving an alcoholic beverage may be made the basis of a 
statutory cause of action under this chapter and may be made the basis of a 
revocation proceeding under section 6.01(b) of this code upon proof that:
 
 (1) at 
the time the provision occurred it was apparent to the provider that the 
individual being sold, served, or provided with an alcoholic beverage was 
obviously intoxicated to the extent that he presented a clear 
danger to himself and others; and
 
 (2) 
the intoxication of the recipient of the alcoholic beverage was a proximate 
cause of the damages suffered.
 
Tex. Alco. Bev. Code § 2.02 (emphasis 
added).[1] If a plaintiff meets the 
“onerous burden of proof” imposed by the Dram Shop Act, then the provider is 
liable for damages proximately caused by its employees or patrons. El Chico 
Corp. v. Poole, 732 S.W.2d 306, 314 (Tex. 1987); see also Tex. Alco. Bev. Code § 2.03.[2] In the Dram Shop Act, the 
Legislature created a duty, not recognized at common law, on alcohol providers 
and increased the potential liability of providers as a means of deterring 
providers from serving obviously intoxicated individuals. Historically, the 
“rule of non-liability” held that an alcohol provider owed no duty to third 
persons for injuries caused by the provision of alcohol. Sewell, 858 
S.W.2d at 352; Poole, 732 S.W.2d at 310; see also Joel Smith, 
Annotation, Common-Law Right of Action for Damages Sustained by Plaintiff in 
Consequence of Sale of Gift of Intoxicating Liquor or Habit-Forming Drug to 
Another, 97 A.L.R.3d 528 (1980). Providers also were generally able to avoid 
liability because the consumption of alcohol, rather than its provision, was 
considered the sole proximate cause of injury to the patron and third 
persons. Poole, 732 S.W.2d at 309. Finally, even if the sale was a 
proximate cause of intoxication, injury was considered to be an unforeseeable 
result of the patron’s intoxication. Id. The common law effectively 
precluded dram shops from incurring liability when their intoxicated patrons 
caused injury to third parties. Id.; see also Mata v. Schoch, 337 
B.R. 135, 136 (Bankr. S.D. Tex. 2005). 
Relying on 
“modern analysis,” in 1987 the Court in Poole discarded the “absolute 
rule of no liability” and imposed a duty on a dram shop not to serve alcoholic 
beverages to a person it knows or should know is intoxicated. Poole, 732 
S.W.2d at 310. For the first time, the Court held that a provider of alcohol is 
negligent as a matter of law when he knowingly sells an alcoholic beverage to an 
intoxicated person, and the Court relaxed the standards for proving proximate 
cause and foreseeability. Id. at 313-14. The claimant was still required 
to prove that the dram shop’s conduct was the proximate cause of his or her 
injury to recover. Id. at 313.
The 
Legislature acted to address the problem of providers’ excessive provision of 
alcohol to patrons. A week after this Court issued Poole, the Dram Shop 
Act became effective and narrowed potential liability from Poole in 
several ways. See id. First, it made the Act the exclusive means of 
pursuing a dram shop for damages for intoxication. Tex. Alco. Bev. Code § 2.03.[3] Second, as an element of 
liability, the patron must be “obviously intoxicated,” not just 
intoxicated, when the dram shop serves him alcohol. Id. § 2.02 
(emphasis added).[4] Third, under Chapter 2, 
“the intoxication of the recipient must be a proximate cause of the damages.” 
Sewell, 858 S.W.2d at 355 (citing Tex. Alco. Bev. Code § 2.02(b)).
The common 
foundation of both Chief Justice 
Jefferson’s and Justice 
O’Neill’s dissents is the contention that the Legislature abolished the 
element of proximate cause for a third party to recover from a dram shop and 
replaced it with “a form of vicarious liability,” as Chief Justice Jefferson 
labels it, or “imputed liability,” as Justice O’Neill terms it. The 
dissenters contend that once the dram shop provides alcohol to an obviously 
intoxicated patron, it becomes responsible for all subsequent injuries caused by 
the patron’s intoxication. This assumption forms the basis of their conclusions 
that submitting a proportionate liability question to the jury does not change 
the dram shop’s joint and several liability for all of the damages. For example, 
even if the patron consumed none of the alcohol purchased from the dram shop, 
the dissenters would hold the provider liable for all the injuries caused by the 
patron to third parties. The statutes do not support their approaches, which 
would nullify the effect of the expansive language in the proportionate 
responsibility statute.
The 
dissenters contend that the failure to read vicarious or imputed liability into 
the Act undermines the legislative purpose. On the contrary, the Act 
accomplishes the objective of deterring the sale of alcohol to obviously 
intoxicated persons in several ways. The Act provides a previously foreclosed 
remedy against sellers of alcohol. And unlike the prior common law, dram shops 
now owe a duty to patrons and injured third parties under specified 
circumstances and can be subject to civil liability for the damages they 
proximately cause. Compare Poole, 732 S.W.2d at 309 with Sewell, 
858 S.W.2d at 355. The Legislature also deterred irresponsible conduct by 
providing that a dram shop’s alcohol license is subject to revocation for 
violating the Act. Tex. Alco. Bev. 
Code § 2.02(b).[5]
Justice O’Neill finds the imposition of 
imputed liability on providers in a single phrase in Section 2.03 of the Act, 
set out in italics: “The liability of providers under this chapter for the 
actions of their customers, members, or guests who are or become intoxicated 
is in lieu of common law or other statutory law warranties and duties of 
providers of alcoholic beverages.” __ S.W.3d __; Tex. Alco. Bev. Code § 2.03.[6] Although Justice O’Neill states that Chapter 33 
applies, she nevertheless concludes that “the dram shop is liable to injured 
third parties for both its own actions and for its patron’s share of 
responsibility.” __ S.W.3d __. She borrows support for this position from 
section 7 of the Restatement of Torts: a party to whom liability is imputed and 
who is also independently liable “is responsible for the share of the verdict 
assigned to [the party whose liability is imputed] and is also responsible for 
the share of the verdict assigned to its own negligence.” Id. at 
__; see also Restatement (Third) 
of Torts: Apportionment of Liability § 7 cmt. j (2000) (stating that “[t]he employer is 
responsible for the share of the verdict assigned to the employee and is also 
responsible for the share of the verdict assigned to its own negligence”). The 
common law has been supplanted by statute and Section 7 is not the law on this 
issue in Texas. The Proportionate Responsibility Act and the Dram Shop Act 
govern this issue.
Justice O’Neill insists that the 
Legislature intended the phrase “the liability of providers under this chapter 
for the actions of their customers,” to mean that providers under this chapter 
are liable for the actions of their customers. __ S.W.3d __; Tex. Alco. Bev. Code § 2.03.[7] The statute can mean this 
only if words not in the text are inserted. Read as written, in context, Section 
2.03 simply means that the Dram Shop Act provides the exclusive remedy against 
an alcohol provider for damages caused by an intoxicated patron at least 18 
years of age—i.e., common law remedies are no longer available. See Borneman 
v. Steak & Ale of Tex., Inc., 22 S.W.3d 411, 412 (Tex. 2000). We do not 
read Section 2.03 to say that a provider of alcohol is responsible, without 
regard to fault, for one hundred percent of the damages caused by an intoxicated 
patron.
            
Chief Justice Jefferson seeks to 
support his position with an analogy to reasoning in vicarious liability theory 
for negligent entrustment cases. __ S.W.3d __. Generally in Texas, the doctrine 
of vicarious liability, or respondeat superior, makes a principal liable for the 
conduct of his employee or agent. See Baptist Mem. Hosp. Sys. v. Sampson, 
969 S.W.2d 945, 947 (Tex. 1998). This liability is based on the principal’s 
control or right to control the agent’s actions undertaken to further the 
principal’s objectives. See Wingfoot v. Alvarado, 111 S.W.3d 134, 136 
(Tex. 2003); Prosser & Keeton on the 
Law of Torts, § 69-70 (W. Page Keeton et al. eds., 5th ed. 1984). Should 
an innocent third party suffer injury at the hands of the agent or employee, the 
theory is that the enterprise itself, not only the agent, should be held 
accountable. See Wingfoot, 111 S.W.3d at 146; Keeton et al., § 69; see also 
Restatement (Third) of Torts: 
Apportionment of Liability § 13 (2000). Here, the patron is not the agent 
or employee of the dram shop, the provider has no control or right to control 
the patron, and the patron’s actions causing the accident are not in furtherance 
of the provider’s business. The analogy to negligent entrustment, a form of 
vicarious liability, suffers from similar deficiencies. As the late Dean Prosser 
explained, the basis for imposing liability on the owner of the thing entrusted 
to another is that ownership of the thing gives the right of control over its 
use. Keeton et al., § 73; see 
Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex. 1987) 
(proving negligence by a theory of negligent entrustment requires establishment 
of ownership). Hence, an owner may have to answer in damages for negligently 
exercising her control by entrusting an item to a person who the owner knew or 
should have known would act in a reckless or incompetent manner. 
Schneider, 744 S.W.2d at 596. Because there is no ownership by the dram 
shop of the object used by a patron to cause the accident, the vicarious 
liability doctrine does not support—and the Dram Shop Act does not create—the 
indemnification scheme proposed by Justice O’Neill or the vicarious 
liability scheme that Chief Justice 
Jefferson would create. Their positions expand the theory of vicarious 
liability beyond its traditional boundaries.
B. Chapter 33
Chapter 33 of 
the Texas Civil Practice and Remedies Code governs the apportionment of 
responsibility in cases within its scope. The 1995 version of the proportionate 
responsibility scheme applies to this case because the collision that injured 
the Duenezes occurred in July 1997. At that time, section 33.013 of the Civil 
Practice and Remedies Code provided, with certain exceptions, that a defendant 
was liable only for the percentage of responsibility found by the trier of fact, 
unless the percentage of responsibility exceeded fifty percent. Tex. Civ. Prac. & Rem. Code § 
33.013.[8] If a defendant’s percentage 
of responsibility exceeded fifty percent, that defendant was jointly and 
severally liable for all of the claimant’s recoverable damages. Id.
Section 
33.003 provided that the factfinder was to compare a defendant’s responsibility 
with the responsibility of the claimant, other defendants, and any responsible 
third party joined by a defendant. Tex. 
Civ. Prac. & Rem. Code § 33.003.[9] The statute required the 
trier of fact to apportion responsibility
 
with 
respect to each person’s causing or contributing to cause in any way the harm 
for which recovery of damages is sought, whether by negligent act or omission, 
by any defective or unreasonably dangerous product, by other conduct or activity 
that violates an applicable legal standard, or by any combination of these . . . 
. 
 
 
Id. § 
33.003(a). 
Chapter 33 
applied to a broad range of cases, including “any cause of action based on tort 
in which a defendant, settling person, or responsible third party is found 
responsible for a percentage of the harm for which relief is sought” and actions 
brought under the Texas Deceptive Trade Practices-Consumer Protection Act. 
Id. §§ 33.002(a),[10] (h).[11] Section 33.002(c) 
expressly excluded from its coverage actions to collect workers’ compensation 
benefits, actions against an employer for exemplary damages arising out of the 
death of an employee, and claims for exemplary damages included in an action to 
which this chapter otherwise applies.[12] Section 33.002(b) excluded 
application of Chapter 33 to actions for damages caused by a list of intentional 
criminal acts committed in concert with another person by imposing joint and 
several liability.[13] Chapter 33 does not 
specifically exclude the Dram Shop Act. 
C. Smith v. Sewell
This Court 
addressed the applicability of Chapter 33 to the Dram Shop Act in Smith v. 
Sewell, 858 S.W.2d 350 (Tex. 1993). When Sewell was decided, Chapter 
33 provided that it applied “[i]n an action to recover damages for negligence . 
. . or an action for products liability grounded in negligence.” Tex. Civ. Prac. & Rem. Code § 
33.001(a).[14] The Court held that the 
essential elements of a dram-shop action replicated those of a negligence claim, 
hence Chapter 33 applied to the Act. Sewell, 858 S.W.2d at 355-56. 
In 
Sewell, the plaintiff became intoxicated at a bar. Id. at 
351. On his way home, he lost control of his car and was severely injured in a 
one-car accident. He sued the bar. This Court explicitly recognized that a cause 
of action against a provider of alcohol is a direct action for the wrongful 
conduct of the provider: “[L]iability under [the Dram Shop Act] is premised on 
the conduct of the provider of the alcoholic beverages—not the conduct of the 
recipient or a third party.” Id. at 355. The Court reasoned this is true 
“regardless of whether the intoxicated individual injures himself or a third 
party.” Id. The Court then examined the comparative responsibility scheme 
and its exclusions and concluded that a cause of action against a provider of 
alcohol was not excluded from the Comparative Responsibility Act, and therefore, 
the comparative responsibility scheme applied. Id. at 356. The 
Court identified the Legislature’s intent, expressed under Chapter 33, as 
“requir[ing] the trier of fact to determine the percentage of responsibility 
attributable to each of the parties involved in causing the injury.” 
Id. (emphasis added). Under the combined effect of both statutes, 
an intoxicated person “will be entitled to recover damages only if his 
percentage of responsibility is found to be less than or equal to 50 percent,” 
and any recovery must be reduced by the percentage of the intoxicated 
individual’s responsibility. Id. The Court recognized that this 
interpretation of the statutes ensured a consistent and equitable approach to 
dram-shop liability, whether the case involved first or third person liability. 
Id.
In this case, 
the court of appeals held that Sewell did not apply to third-party Dram 
Shop claims like this one. 69 S.W.3d at 805. The court interpreted Sewell 
as limiting an intoxicated patron’s recovery against a provider according to the 
intoxicated person’s percentage of responsibility but not imposing similar 
limitations when a third party seeks recovery against a provider for damages 
caused by an intoxicated patron’s actions. Id. Instead, the court 
of appeals concluded that a provider is vicariously liable for the damages 
caused by an intoxicated employee or patron in third party actions in which 
there are no allegations of negligence of the third party. Id. The court 
reasoned that this interpretation is consistent with the Dram Shop Act because 
the Act imposes liability on the provider for the actions of the intoxicated 
person, “just as an employer is liable for the damages caused by an employee in 
the course and scope of the employment.” Id. at 806 (citations omitted). 
Thus, the court concluded, “a division of liability would be meaningless: the 
vicariously liable party is liable for the other party’s actions, as though 
those actions were its own.” Id.
This is 
contrary to our opinion in Sewell, and rebutted by the deterrent effects 
of the Act, discussed above. This Court has interpreted the Dram Shop Act to 
create liability based “on the conduct of the provider of the alcoholic 
beverages—not the conduct of the recipient or a third party.” Sewell, 858 
S.W.2d at 355. The conduct for which the provider may be held liable is the same 
conduct “whether the intoxicated individual injures himself or a third party.” 
Id. Thus, the premise of the court of appeals’ vicarious liability 
holding—that the provider’s liability stems from the conduct of the intoxicated 
individual instead of the provider’s own conduct—runs contrary to both the Dram 
Shop Act and our interpretation of the Act in Sewell. Compare 
Sewell, 858 S.W.2d at 355, with 69 S.W.3d at 806. 
The dissents 
likewise recognize significant problems with their approaches in light 
of this precedent. They approach the problem of Sewell 
differently. Chief Justice Jefferson 
argues that Sewell was wrongly decided but nevertheless 
would keep the holding intact as to first–party claims and create a different 
rule for third–party claims. __ S.W.3d __. Similarly, Justice O’Neill would limit 
Sewell’s holding to first–party claims thereby distinguishing it from the 
instant case. __ S.W.3d __. Nothing in the statute supports a different rule in 
this regard for first– versus third– party claims. In fact, the statute 
anticipates the existence of both types of claims by describing the “person 
bringing the suit” broadly and referring to the danger created by the 
intoxicated person as impacting “himself and others.” Tex. Alco. Bev. Code § 2.02.[15] Contrary to Chief Justice Jefferson’s dissent, 
nothing in the Dram Shop Act prevents a provider from “lessen[ing] or escap[ing] 
liability altogether” if a jury determined that the intoxicated patron was 
completely responsible for the damages and injuries suffered by a third–party. 
See __ S.W.3d __. Refusing to apply Sewell’s rule of law to cases 
in which a third party is injured as a result of an intoxicated person’s actions 
is contrary to the language of the Dram Shop Act, to the premise of 
Sewell, and to the purpose of the Dram Shop Act: the provider’s liability 
stems from its own conduct. See Borneman, 22 S.W.3d at 413 (correctly 
holding that a jury question that was inconsistent with the language of the Dram 
Shop Act for establishing liability was erroneous).
D. Legislative Intent
Our review is 
confined to identifying the expressed legislative intent and applying it. Even 
if this Court were to agree with the court of appeals that holding a provider 
vicariously liable for a patron’s intoxication may be a legitimate public 
policy, we would still be constrained to faithfully apply the Legislature’s 
statutory proportionate responsibility scheme. Imposing vicarious liability in 
dram-shop cases conflicts with the Proportionate Responsibility Act. The court 
of appeals suggested that the Legislature did not intend for an innocent third 
party to bear the risk of an intoxicated patron’s insolvency. But, by enacting 
Chapter 33, the Legislature made the policy decision that an innocent third 
party, suing the intoxicated patron and the dram shop, could be burdened with 
the risk of a joint tortfeasor’s insolvency. A tortfeasor who was found less 
than fifty-one percent responsible does not have to pay the entire amount of 
damages, only his or her proportionate share. Tex. Civ. Prac. & Rem. Code 
§§ 33.013(a), (b)(1).[16]
We recognize 
that there may be a greater incentive to avoid conduct that leads to 
responsibility for higher damages than to avoid conduct that leads to 
responsibility for lower damages. Accordingly, a statute that makes providers 
liable for all the damages caused by an intoxicated patron could be a greater 
deterrent to serving that patron. That may influence the drafting of a statute, 
but it says little about how to interpret the words of the Dram Shop and 
Proportionate Responsibility Acts. The statutes only hold providers responsible 
for their own conduct causing injury. This is consistent with a fundamental 
tenet of tort law that an entity’s liability arises from its own injury-causing 
conduct. Under the dissenters’ positions, the provider would be responsible for 
all the damages caused by an inebriated patron even if he never drank any of the 
product purchased from the provider. The same would occur if an inebriated 
patron drank a bit of the dram shop’s alcohol but evidence established that it 
did not contribute any further to the deterioration of the patron’s ability to 
drive safely. We recognize some of the alternatives the Legislature considered 
as it drafted the statutes; however, we do not pick and choose among policy 
options on which the Legislature has spoken. “Our role . . . is not to 
second-guess the policy choices that inform our statutes or to weigh the 
effectiveness of their results; rather, our task is to interpret those statutes 
in a manner that effectuates the Legislature’s intent.” McIntyre v. 
Ramirez, 109 S.W.3d 741, 748 (Tex. 2003). Upon a finding of liability, the 
statutes make dram shops responsible for the proportionate share of the injuries 
their conduct caused.
The broad 
coverage of the proportionate responsibility statute to tort claims is 
persuasive. The Chapter 33 proportionate responsibility scheme includes 
exceptions for certain torts, but claims against providers of alcohol are not 
among those exceptions. See, e.g., Tex. Civ. Prac. & Rem. Code 
§§ 33.002(b),[17] (c).[18] For example, the 
Legislature carved out exceptions for a host of criminal acts, declaring that 
there should be joint and several liability instead of proportionate 
responsibility, but only if there was specific intent to do harm to others and 
the defendant acted in concert with another. Id. § 33.002.[19] The list of crimes is 
numerous and broad in scope, ranging from capital murder to fraudulent 
destruction of a writing, and also includes theft when “the punishment level 
. . . is a felony of the third degree or higher.” Tex. Civ. Prac. & Rem. Code 
§ 33.002(b)(13).[20] Section 33.002(c) 
expressly excluded from its coverage actions to collect workers’ compensation 
benefits, actions against an employer for exemplary damages arising out of the 
death of an employee, and claims for exemplary damages included in an action to 
which this chapter otherwise applies.[21] When the Legislature has 
chosen to impose joint and several liability rather than proportionate 
liability, it has clearly said so.
The 
Legislature created a strict liability cause of action against a person who 
manufactures methamphetamine for injuries, damages, or death arising from the 
manufacture or exposure to the manufacturing process of that drug. Tex. Civ. Prac. & Rem. Code 
§§ 99.002–.003. The Legislature declared that a person who manufactures 
methamphetamine and is found liable for any amount of damages arising from the 
manufacture is jointly liable with any other defendant for the entire amount of 
damages arising from the manufacture. Id. § 99.004. In both the 
statute that created the cause of action against such manufacturers and in 
amendments to the Proportionate Responsibility Act, the Legislature specifically 
said that the proportionate responsibility scheme “does not apply in an action 
for damages arising from the manufacture of methamphetamine.” Id. 
§ 99.005; see also id. § 33.002(c)(3). The Legislature did not 
carve out an exclusion for alcohol providers in either the Proportionate 
Responsibility Act or the Dram Shop Act.
Both dissents 
struggle to conclude that an injured third party may recover his damages 
entirely from the alcohol provider under the Dram Shop Act. Chief Justice Jefferson argues that the 
Act creates “a form of vicarious liability,” while Justice O’Neill allows a jury to 
apportion liability but ultimately holds the provider liable for the full amount 
of damages, regardless of the jury’s determination. The stated public policy 
behind the Alcoholic Beverage Code, including the Dram Shop Act, is “the 
protection of the welfare, health, peace, temperance, and safety of the people 
of the state.” Tex. Alco. Bev. Code 
§ 1.03. More specifically, the Dram Shop Act codifies the exclusive 
action against an alcohol provider for injuries or damages resulting from the 
intoxication of a patron. Id. § 2.02. The legislative intent to 
protect the public and provide a potential remedy against an alcohol provider 
does not equate to a guarantee of recovery against a provider by an injured 
party. The Act simply supplants in a single codified action all prior common law 
theories that previously could have been employed by the injured party (either a 
third party or the intoxicated patron himself) against a provider. See 
id. § 2.03. While the dissents’ positions might express sound public policy, 
we are constrained to conclude that neither correctly applies the Legislature’s 
statutory proportionate responsibility scheme. Both read more into the Dram Shop 
Act than the words chosen by the Legislature can bear.
At the time 
of the Duenezes’ injuries, the proportionate responsibility scheme imposed joint 
and several liability on those who caused toxic tort injuries and those who 
released hazardous substances into the environment if their responsibility was 
equal to or greater than fifty percent. Tex. Civ. Prac. & Rem. Code 
§ 33.013(c).[22] In such cases, liability 
was not limited by proportionate responsibility. In 2003, the Legislature 
revisited that exclusion and repealed it in its entirety.[23] Now, defendants found 
liable for these tortious acts are subject to the general proportionate 
responsibility scheme. The Legislature seemed intent on creating a general 
scheme of proportionate responsibility for tort claims, subject to specific 
statutory exclusions.
Finally, our 
controlling interpretation of that statutory scheme has remained in place since 
our 1993 decision in Smith v. Sewell. 858 S.W.2d at 356 (holding that 
“[a]pplication of the principles of comparative responsibility to causes of 
action brought under [the Dram Shop Act] establishes a consistent and equitable 
approach to the issue of ‘dramshop liability’ generally, and first party 
‘dramshop liability’ specifically”). In the thirteen years since Sewell 
was decided, the Legislature has amended the Dram Shop Act and has extensively 
amended the proportionate responsibility statutes, but it has never excluded a 
cause of action against a provider of alcohol from comparative or proportionate 
responsibility. We presume that the Legislature knew of our holding in 
Sewell and that by subsequently re-enacting the Proportionate 
Responsibility Act and the Dram Shop Act, it accepted this Court’s construction 
of those statutes. “‘The Legislature must be regarded as intending statutes, 
when repeatedly reenacted, as in the case here, to be given that interpretation 
which has been settled by the courts.’” Wich v. Fleming, 652 S.W.2d 353, 
355 (Tex. 1983) (quoting Marmon v. Mustang Aviation, Inc., 430 S.W.2d 
182, 187 (Tex. 1968)); Coastal Indus. Water Auth. v. Trinity Portland Cement 
Div., Gen. Portland Cement Co., 563 S.W.2d 916, 918 (Tex. 1978). 
Given the 
many instances in which the Legislature has (1) expressly said that certain 
causes of action are excluded from the Proportionate Responsibility Act, which 
would otherwise limit liability commensurate with proportionate responsibility, 
and (2) has expressly tailored special joint and several liability 
provisions for some causes of action, the phrase in Section 2.03 cannot 
reasonably be read to require vicarious liability and joint and several 
liability in lieu of proportionate liability for alcohol providers.
The 
dissenters suggest that the Court’s opinion exonerates dram shops from 
liability. They draw a stark distinction between excusing a dram shop from 
liability for its conduct that violates the Act, which they assert to be the 
Court’s opinion, and making the provider liable for all the injuries caused by 
an inebriated patron, which is the dissenters’ position. For several reasons, 
our interpretation does not excuse dram shops from liability for their conduct. 
First, it is simply inaccurate to describe the Court’s holding as allowing dram 
shops to escape liability. The central issue in this case is the apportionment 
of damages among liable parties. Dram shops are liable if they provide alcoholic 
beverages to an individual that is obviously intoxicated to the extent that he 
presents a clear danger to himself and others, and the intoxication of the 
patron was a proximate cause of the injuries. Tex. Alco. Bev. Code § 2.02(b). These 
requirements were promulgated by the passage of the Act in 1987. In this case, 
we hold that dram shops are responsible for the proportion of damages they cause 
or contribute to cause, as set forth in the Proportionate Responsibility Act. 
Tex. Civ. Prac. & Rem. Code 
§ 33.003.[24] Second, we follow the 
Legislature’s guidance in the language of the statute, as explained above. 
Third, it is not true that juries will always assign most of the responsibility 
for injury, as between a provider and an inebriated patron, to the patron. 
Juries have found the dram shop equally or more responsible than the patron for 
injuries proximately caused by the intoxication of the patron. See, 
e.g., I-Gotcha, Inc. v. McInnis, 903 S.W.2d 829, 837 (Tex. App.— Fort 
Worth 1995, writ denied) (jury found that the dram shop proximately caused 
fifty-one percent of the injuries); Venetoulias v. O’Brien, 909 S.W.2d 
236, 239 (Tex. App.—Houston [14th Dist.] 1995, writ dism’d by agr.) (trial court 
found that the patron proximately caused thirty-three percent of the injuries 
and the dram shop thirty-three percent). Unlike Chief Justice Jefferson’s position, 
which would take the question of apportioning responsibility away from the jury, 
we leave this determination to the fact-finder imbued with “constitutional 
authority to weigh conflicting evidence.” See Volkswagen of Am., Inc. v. 
Ramirez, 159 S.W.2d 897, 913–14 (Tex. 2004) (Jefferson, C.J., 
dissenting).
III. Severance
The trial 
court severed F.F.P.’s cross-claim against Ruiz and then tried the case with 
F.F.P. as the only defendant. The court of appeals affirmed the trial court’s 
severance order, concluding that because F.F.P. was vicariously liable for 
Ruiz’s conduct, F.F.P.’s right of recovery, if any, was through an 
indemnification action only. 69 S.W.3d at 807. The court of appeals held that 
any indemnity claim F.F.P. might have against Ruiz would not accrue until 
F.F.P.’s liability to the Duenezes’ was “fixed and certain.” Id. at 
807-08. By this reasoning, F.F.P.’s claim for indemnification against Ruiz would 
not become actionable until an adverse judgment was taken. Id. The court 
rejected F.F.P.’s request to include Ruiz as a responsible third party under 
Chapter 33, reasoning that F.F.P.’s vicarious liability puts F.F.P. in the same 
position as Ruiz would have been. Id. at 808. Because Ruiz’s actions are 
imputed to F.F.P., the court continued, Ruiz is not a responsible third party 
who may be included in a proportionate responsibility question. Id. 

Rule 41 of 
the Texas Rules of Civil Procedure provides that “[a]ny claim against a party 
may be severed and proceeded with separately.” We will not reverse a trial 
court’s order severing a claim unless the trial court abused its discretion. 
Guar. Fed. Sav. Bank v. Horseshoe Op. Co., 793 S.W.2d 652, 658 (Tex. 
1990). 
 
A claim is 
properly severable if (1) the controversy involves more than one cause of 
action, (2) the severed claim is one that would be the proper subject of a 
lawsuit if independently asserted, and (3) the severed claim is not so 
interwoven with the remaining action that they involve the same facts and 
issues.
 
 
Id. We 
have explained that avoiding prejudice, doing justice, and increasing 
convenience are the controlling reasons to allow a severance. See id. 

As already 
explained, the Dram Shop Act does not make a provider vicariously liable for the 
conduct of an intoxicated patron. F.F.P.’s liability arises from the actions of 
its employees and agents—not through the actions of Ruiz. See Sewell, 858 
S.W.2d at 355. Thus, F.F.P.’s claim against Ruiz is not one for indemnification 
that could be properly severed; it is one of contribution for Ruiz’s 
proportionate share of the damages for which he is responsible. F.F.P.’s claim 
against Ruiz is “interwoven with the remaining action”: it involves the same 
facts and issues to be litigated in the Duenezes’ action against F.F.P. In fact, 
to succeed in a claim against F.F.P., the Duenezes had to prove that Ruiz was 
obviously intoxicated and that his conduct proximately caused damages—the same 
facts and issues that would be litigated in a separate suit by F.F.P. against 
Ruiz. The trial court abused its discretion in severing F.F.P.’s claim against 
Ruiz.
Chapter 33 
requires “[t]he trier of fact, as to each cause of action asserted, [to] 
determine the percentage of responsibility . . . for [each claimant, defendant, 
settling person, and responsible third party who has been joined under Section 
33.004] with respect to each person’s causing or contributing cause in any way 
the harm for which recovery of damages is sought . . . .” Tex. Civ. Prac. & Rem. Code § 
33.003. This statutory mandate is not discretionary; failing to correctly apply 
the law is an abuse of discretion. In re Kuntz, 124 S.W.3d 179, 181 (Tex. 
2003). Therefore, F.F.P. was entitled to a charge that included a question to 
allow the trier of fact in a single trial to determine Ruiz’s proportionate 
share of responsibility. The trial court’s severance constituted reversible 
error.
IV. Conclusion
The trial 
court abused its discretion by severing F.F.P.’s claim against Ruiz, proceeding 
to trial with F.F.P. as the only defendant, and refusing to submit jury 
questions for determination of Ruiz’s negligence and proportion of 
responsibility. We reverse the court of appeals judgment and remand the case to 
the trial court for a new trial.
 
________________________________________
J. Dale 
Wainwright
Justice
 
 
OPINION DELIVERED: May 11, 2007




[1] The Legislature has amended much of the code applicable 
to this case. For clarity, the text references the codified version of the 
statutes applicable to the case as current law with the full citation appearing 
in footnotes. Citations without clarifying footnotes refer to the version in 
effect on the date of this opinion.
Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 
Tex. Gen. Laws 1673, 1674, amended by Act of June 17, 2005, 79th Leg., 
R.S., ch. 643, § 1, 2005 Tex. Gen. Laws 1617, 1617 (current version at Tex. Alco. Bev. Code § 
2.02).

[2] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 
1987 Tex. Gen. Laws 1673, 1674, amended by Act of June 20, 2003, 78th 
Leg., R.S., ch. 456, § 1, 2003 Tex. Gen. Laws 1698, 1698-99 (current version at 
Tex. Alco. Bev. Code § 
2.03(a)).

[3] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 
1987 Tex. Gen. Laws 1673, 1674 (amended 2003).

[4] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 
1987 Tex. Gen. Laws 1673, 1674 (amended 2005).

[5] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 
1987 Tex. Gen. Laws 1673, 1674 (amended 2005).

[6] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 
1987 Tex. Gen. Laws 1673, 1674 (amended 2003).

[7] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 
1987 Tex. Gen. Laws 1673, 1674 (amended 2003).

[8] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 
1985 Tex. Gen. Laws 3242, 3271, amended by Act of June 3, 1987, 70th 
Leg., 1st C.S., ch. 2, § 2.09, 1987 Tex. Gen. Laws 37, 42, amended by 
Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 
971, 974, amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, 
§§ 4.07, 4.10(5), 2003 Tex. Gen. Laws 847, 858-59 (current version at Tex. Civ. Prac. & Rem. Code 
§ 33.013).

[9] Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 
2.06, 1987 Tex. Gen. Laws 37,41, amended by Act of May 8, 1995, 74th 
Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972, amended by Act of 
June 2, 2003, 78th Leg., R.S., ch. 204, § 4.02, 2003 Tex. Gen. Laws 847, 855 
(current version at Tex. Civ. Prac. 
& Rem. Code § 33.003).

[10] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 
2.05, 1987 Tex. Gen. Laws 37,41, amended by Act of May 29, 1989, 71st 
Leg., R.S, ch. 380, § 4, 1989 Tex. Gen. Laws 1490,1492, amended by 
Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 
971,971-72, amended by Act of May 21, 2001, 77th Leg., R.S., ch. 643, § 
2, 2001 Tex. Gen. Laws 1208, 1208-09, amended by Act of June 2, 2003, 
78th Leg., R.S., ch. 204, § 4, 2003 Tex. Gen. Laws 847, 858-59 (current version 
at Tex. Civ. Prac. & Rem. Code 
§ 33.002).

[11] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, repealed 
2003).

[12] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, 
2003).

[13] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, repealed 
2003).

[14] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 
1985 Tex. Gen. Laws 3242, 3271, amended by Act of June 3, 1987, 70th Leg. 
1st C.S., ch. 2, § 2.04, 1987 Tex. Gen. Laws 37, 40, amended by Act of 
May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 971 
(current version at Tex. Civ. Prac. 
& Rem. Code § 33.002). Section 33.001 grounded the applicability 
of the statute in negligence. However, Section 33.002, added to the code in 
1987, is specifically devoted to the applicability of the chapter and is rooted 
in torts, giving the current law a broader application than that at the time of 
Sewell.
 

[15] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 
1987 Tex. Gen. Laws 1673, 1674 (amended 2005).

[16] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 
1985 Tex. Gen. Laws 3242, 3271 (amended 1987, 1995, 2003).

[17] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, repealed 
2003).

[18] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, 
2003).

[19] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, 
2003).

[20] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, repealed 
2003).

[21] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, 
2003).

[22] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 
1985 Tex. Gen. Laws 3242, 3271 (amended 1987, 1995, 2003).

[23] Act of June 2, 2003, 78th Leg., R.S., ch. 204, 
§ 4.10(5), 2003 Tex. Gen. Laws 847, 859.

[24] Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 
2.06, 1987 Tex. Gen. Laws 37,41, amended by Act of May 8, 1995, 74th 
Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972, amended by Act of 
June 2, 2003, 78th Leg., R.S., ch. 204, § 4.02, 2003 Tex. Gen. Laws 847, 855 
(current version at Tex. Civ. Prac. 
& Rem. Code § 33.003).